## ADOPTION OF WARREN.[1]

No. 97-P-1242.

Plymouth. February 9, 1998. - April 28, 1998.

Present: WARNER, C.J., KAPLAN, & SPINA, JJ.

*Interstate Compact on Placement of Children. Adoption,* Dispensing with parent's consent. *Parent and Child,* Dispensing with parent's consent to adoption. *Minor,* Care and protection. *Evidence,* Child custody proceeding.

This court concluded that the provisions of the Interstate Compact on the Placement of Children, St. 1963, c. 452, §§ 1-8, applied to the Department of Social Services' proposed placement of a child with a parent in another State, where the out-of-State parent did not have custody of the child, and where the department had requested that the State receiving the child perform a home study to determine the parent's ability to care for the child. [623-624]

In a proceeding under G. L. c. 119, § 24, and G. L. c. 210, § 3, to establish the need of a minor child for care and protection and to dispense with parental consent to the adoption, the judge's findings that the father was currently unfit to care for the child and that the termination of the father's parental rights was in the child's best interests were supported by clear and convincing evidence and were not clearly erroneous. [624-626]

PETITION filed in the Brockton Division of the District Court Department on October 11, 1994.

The case was heard by *Robert F. Murray,* J.

*Margaret M. Geary* for the father.

*David P. Shapiro* for the child.

*Juliana deHaan Rice,* Assistant Attorney General, for Department of Social Services.

SPINA, J. A father appeals from a judgment of the Brockton District Court which committed his son, Warren, to the custody of the Department of Social Services (DSS) and dispensed with the need to notify him or obtain his consent on any petition for the adoption of Warren. We affirm.

[1]A pseudonym.

Warren was born in Massachusetts on September 24, 1989. On October 11, 1994, DSS filed a care and protection petition on behalf of Warren, pursuant to G. L. c. 119, § 24, and requested that he be committed to the custody of DSS. The petition was subsequently amended to request that the District Court dispense with the need for parental consent in connection with any petition for the adoption of Warren. See G. L. c. 210, § 3. DSS was granted temporary custody of Warren. On November 21, 1994, the mother of Warren voluntarily and unconditionally surrendered him to the care and custody of DSS for the purpose of adoption.

The father lives in Glens Falls, New York. In March, 1995, he received notice of the care and protection petition filed on behalf of Warren when he saw a notice in the Glens Falls Chronicle. The father contacted DSS to contest the petition and indicated that he would be interested in caring for his son. A trial was held in the District Court in April and May, 1996.

The District Court found that Warren had been diagnosed with attention deficit and hyperactive disorder and that he was excessively aggressive, emotionally unstable, and very demanding. Psychological testing indicated that Warren needed to be in a structured environment with one-on-one attention and that he required extensive support services. Because of the nature and complexity of his problems, psychological evaluators strongly recommended that Warren be placed in a long-term specialized home without any other young children in residence.

The father lives in a four-bedroom house with the mother of their two children and her three children from a prior relationship. The father admitted that he has had problems with substance abuse in the past, has a substantial criminal record, has a limited income with many financial obligations, has no health insurance, and is responsible for the care of five small, active children, one of whom has problems similar to those of Warren. The father is employed full-time, and the woman the father is living with is employed part-time.

At the request of DSS, the Warren County, New York, Department of Social Services conducted several home studies of Warren's father. The department recommended that Warren not be placed in the custody of his father because of his father's poor living conditions, his father's extensive criminal history, and his

father's inability fully to understand and to address his son's significant emotional and behavioral problems.[2]

The District Court found that, although the father was sincere in his assertion that he loved his son, he was unable to provide, either directly or indirectly, the type and level of care and supervision that Warren required. The District Court further found that Warren had been living with his foster mother since April, 1995, and had responded very positively to her guidance and care. The District Court concluded that DSS had presented clear and convincing evidence to show that Warren was in need of care and protection and that his father was unfit to be his parent. Warren was, therefore, committed to the permanent custody of DSS. The District Court also ordered that, in the best interests of Warren, it would dispense with the need for further notice to and the consent of his father with respect to any adoption proceedings.[3]

The father now brings the present appeal.[4] He also filed with the District Court a request for a stay pending appeal. The District Court allowed the request for a stay to the extent that

[2]The District Court noted that both Massachusetts and New York were members of the Interstate Compact on the Placement of Children (Interstate Compact), St. 1963, c. 452, §§ 1-8. Article III(d) of the Interstate Compact provides that a child may not be sent into a receiving State until the receiving State gives written notice to the sending State that the placement of the child in that State does not appear to be contrary to the child's interests. The District Court pointed out that the Commonwealth of Massachusetts could not send Warren to live in New York unless New York approved of his placement in writing and that New York had not approved of such placement.

[3]Following the entry of the District Court's judgment, the father filed a motion seeking visitation with his son. Hearings on the motion were held in December, 1997. The District Court judge found that Warren would benefit from limited visits with his father if he was emotionally prepared for such visits by his therapist. Accordingly, the District Court judge ordered that visitation between Warren and his father would take place three times per calendar year, that each visit would take place within Massachusetts, and that each visit would last no more than two hours and would involve some event or activity that was of interest to Warren. The District Court judge further ordered that DSS or Warren could move for a termination or modification of visitation if it appeared that visitation was harmful to Warren.

[4]Counsel for Warren also has filed a brief in the present appeal in which he raises arguments that are similar to those which have been raised by the father. Counsel for Warren asserts that DSS has not proven by clear and convincing evidence that the father is an unfit parent and that his parental rights should be terminated. At oral argument, however, counsel for Warren stated that Warren had changed his mind about living with his father and that he wanted to remain in his current placement.

DSS was not permitted to initiate any proceedings towards the adoption of Warren until the appeal had been decided. The request for a stay was otherwise denied.

In this appeal, the father first asserts that the Interstate Compact on the Placement of Children (Interstate Compact), see St. 1963, c. 452, §§ 1-8, does not apply to the sending or bringing of a child into another State by a parent for placement of the child with a member of his or her family. As a consequence, the recommendation by the Department of Social Services in New York that Warren not be placed with his father in New York has no bearing upon the decision about his custody. In support of his position, the father relies upon Article VIII of the Interstate Compact which provides, in pertinent part, as follows:

> "This compact shall not apply to:
>
> (a) The sending or bringing of a child into a receiving state by his parent, stepparent, grandparent, adult brother or sister, adult uncle or aunt, or his guardian and leaving the child with any such relative or non-agency guardian in the receiving state."

Contrary to the assertions of the father, the limitations on the application of the Interstate Compact, as set forth in Article VIII, do not preclude its application in the present case. Warren was not being sent into or brought into New York by his father because his father did not have custody of Warren. DSS had been granted temporary custody of Warren, and the limitations set forth in Article VIII of the Interstate Compact do not preclude its application to the sending or bringing of a child into a receiving State by a State agency.

The regulations governing the placement of children across State lines, which were promulgated in accordance with the Interstate Compact, specifically address the situation where a State agency places a child with a parent in another State. Section 7.507(4) of the Code of Massachusetts Regulations provides that "[w]henever a state agency has custody of a child or care of a child pursuant to a voluntary placement agreement, and such agency places a child with his/her parent(s) in another state, this constitutes a placement under the Interstate Compact." 110 Code Mass. Regs. § 7.507(4) (1993). DSS had been granted temporary custody of Warren, and his mother had voluntarily

surrendered him to the care and custody of DSS for the purpose of adoption. The placement of Warren with his father in New York by DSS would constitute a placement under the Interstate Compact, thereby rendering the provisions of the Interstate Compact applicable to the present case.

The Interstate Compact also is applicable to the present case pursuant to Section 7.503(8) of the Code of Massachusetts Regulations which provides that "[t]he Interstate Compact shall apply to any stay across state borders whenever the sending agency requests a homestudy or supervision of a child by the receiving state." 110 Code Mass. Regs. § 7.503(8) (1993). DSS requested that the Department of Social Services in New York conduct a home study of the father to assess his ability to care for his son. Several home visits were made, culminating in a recommendation that Warren not be placed in the custody of his father. Since DSS, as the sending agency, requested a home study by the State of New York, as the receiving State, in order to determine whether Warren could stay with his father, the provisions of the Interstate Compact apply.

Because the Interstate Compact is applicable to the present case, DSS could not have sent Warren to live with his father in New York unless the conditions for placement had been satisfied. Article III(d) of the Interstate Compact provides as follows: "The child shall not be sent, brought or caused to be sent or brought into the receiving state until the appropriate public authorities in the receiving state shall notify the sending agency, in writing, to the effect that the proposed placement does not appear to be contrary to the interests of the child." As the District Court judge properly pointed out, New York did not approve of the placement of Warren with his father. To the contrary, the Department of Social Services in New York specifically recommended that Warren not be placed with his father. Since New York, as the receiving State, notified DSS that the placement of Warren with his father would be contrary to the interests of Warren, DSS could not place Warren in New York. Moreover, because Warren could not be placed in New York with his father, the Department of Social Services in New York, or DSS, was under no obligation to offer or provide the father with any services to ameliorate identified deficiencies in his parenting abilities.

The father next argues that the District Court judge erred in concluding that Warren was in need of care and protection and

that the termination of his parental rights was in the best interests of Warren. A judge's findings in a custody proceeding must be specific and detailed so as to demonstrate that close attention has been given to the evidence. *Care and Protection of Laura*, 414 Mass. 788, 791 (1993). "The judge's findings must be left undisturbed absent a showing that they are clearly erroneous." *Adoption of Kimberly*, 414 Mass. 526, 529 (1993). "Moreover, the judge's assessment of the weight of the evidence and the credibility of the witnesses is entitled to deference." *Custody of Eleanor*, 414 Mass. 795, 799 (1993). In care and protection proceedings, subsidiary evidentiary findings of fact only need to be proven by a fair preponderance of the evidence. *Care and Protection of Laura*, 414 Mass. at 793. When all of these subsidiary facts are taken together, they must establish parental unfitness by clear and convincing evidence. *Ibid.* Parental unfitness must be proven by clear and convincing evidence in both care and protection cases and in proceedings to dispense with consent to adoption under G. L. c. 210, § 3. *Id.* at 790.

The critical consideration in deciding whether to dispense with the need for parental consent to adoption is whether the natural parents are currently fit to further the welfare and best interests on their children. *Petitions of the Dept. of Social Servs. to Dispense with Consent to Adoption*, 389 Mass. 793, 799 (1983). See G. L. c. 210, § 3. "[I]n deciding whether natural parents may be deprived of the custody of their minor children, both the fitness of the parents and the needs of the particular children must be examined." *Petitions of the Dept. of Social Servs. to Dispense with Consent to Adoption, supra* at 800. Natural parents may not be deprived of the custody of their minor children absent a showing that they "have grievous shortcomings or handicaps that would put the child's welfare in the family milieu much at hazard" or that "some factor such as lengthy separation and a corresponding growth in the ties between the child and the prospective adoptive parents indicated that the child would be hurt by being returned to the natural parents." *Petition of the New England Home for Little Wanderers to Dispense with Consent to Adoption*, 367 Mass. 631, 639, 646 (1975).

"The specialized needs of a particular child when combined with the deficiencies of a parent's character, temperament, capacity, or conduct may clearly establish parental unfitness."

*Petitions of the Dept. of Social Servs. to Dispense with Consent to Adoption*, 18 Mass. App. Ct. 120, 125 (1984). Because parental fitness must be evaluated in the context of a particular child's needs, parents might be fit to bring up one child and not fit to bring up another in light of the fact that the needs of one child may be different from those of another. *Petition of Catholic Charitable Bureau of the Archdiocese of Boston, Inc., to Dispense with Consent to Adoption*, 18 Mass. App. Ct. 656, 661 (1984). While raising siblings together is important, it is not dispositive of custody matters. *Ibid.*

In the present case, the District Court judge made detailed findings of fact relating to the relationship between Warren and his father. The judge considered evidence of the personal qualities of the father, the deficiencies in his home environment, the special needs of Warren, the father's inability to fully understand or address his son's special needs and behavioral problems, and the harm that could be inflicted upon Warren if he were permitted to live with his father. The judge also considered reports from social workers and other professionals who recommended against the placement of Warren with his father. The judge found that Warren had already been in the custody of DSS for at least twelve months, that Warren had formed a positive bond with his foster mother, that the forced removal of Warren from his foster mother would likely cause him serious psychological harm, and that his father lacked the capacity to meet his special needs. The factual findings of the judge, and the conclusions which he derived from them, were adequately supported by the record in this case. We conclude that DSS established, by clear and convincing evidence, that Warren was in need of care and protection and that the termination of his father's parental rights was in his best interests. Accordingly, there was no error by the District Court.[5]

*Judgment affirmed.*

---

[5] In light of the fact that the District Court has allowed visitation between Warren and his father, we note that after careful consideration by the court, postadoption visitation may be incorporated into a plan of adoption. *Adoption of Nicole*, 40 Mass. App. Ct. 259, 264 (1996). The decision as to whether to allow postadoption visitation is more a question of what is in the interests of the child, rather than one of the rights of the parent. *Adoption of Abigail*, 23 Mass. App. Ct. 191, 199-200 (1986).