529 S.E.2d 141 (2000)
242 Ga. App. 387
In the Interest of J.S.G. et al., children.
No. A99A1908.
Court of Appeals of Georgia.
January 25, 2000.
Reconsideration Denied February 16, 2000.
Certiorari Denied June 9, 2000.
*142 White & Choate, Harold J. Choate III, Cartersville, for appellant.
Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Velma C. Tilley, Assistant Attorneys General, for appellee.
SMITH, Judge.
The mother of J.S.G., H.L.G., and T.L.R. appeals from the order of the Juvenile Court of Bartow County terminating her parental rights in the children. As we understand her three enumerations of error, they challenge the findings of the trial court on the basis that insufficient evidence was presented to support them. We conclude that although the mother appears to have made some progress, sufficient evidence was presented to support the trial court's findings that the children's deprivation was likely to continue, that the continued deprivation would be likely to cause serious physical, mental, emotional, or moral harm to the children, and that termination of the mother's rights was in the best interests of the children. We therefore affirm the judgment terminating the mother's rights.
The decision to terminate parental rights is a two-step process. The court first determines whether clear and convincing evidence exists of parental misconduct or inability. If such evidence exists, the court then considers whether termination is in the best interests of the children, considering their physical, mental, emotional, and moral conditions and needs, including the need for a secure and stable home. OCGA § 15-11-81(a); In the Interest of A.M.V., 222 Ga.App. 528, 529, 474 S.E.2d 723 (1996). Parental misconduct or inability exists when: (1) the children are deprived; (2) lack of proper parental care or control is the cause of the deprivation; (3) the deprivation is likely to continue or will not be remedied; and (4) continued deprivation is likely to cause the children serious physical, mental, emotional, or moral harm. OCGA § 15-11-81(b)(4)(A); A.M.V., supra.
In reviewing a decision to terminate parental rights, this court must view the evidence in a light most favorable to the appellee. A.M.V., supra. The standard of review on appeal is whether, after reviewing the evidence in this light, any rational trier of fact could have found by clear and convincing evidence that the natural parent's right to custody should be terminated. We must defer to the trial court's factfinding and affirm unless this standard is not met. In the Interest of J.O.L., 235 Ga.App. 856, 510 S.E.2d *143 613 (1998). In this case, the appellate standard was met.
1. We find no merit in the mother's contention that the juvenile court erred in concluding that the children were deprived because of the mother's lack of proper parental care or control and that the deprivation was likely to continue. No question exists about the determination that the children were deprived within the meaning of OCGA § 15-11-2, because the deprivation order entered in 1997 and the order extending it in 1998 were not appealed. Indeed, the extension order was still in effect when the termination petition was filed.
Moreover, evidence was presented at the termination hearings that the mother had not complied with certain essential elements of the case plan developed by the Department of Family & Children Services (DFACS) for reunifying her with her children. The children first came to the attention of DFACS in April 1997, after T.L.R., who was three and a half years old at the time, wandered off while unattended and was attacked by a dog. T.L.R.'s injuries were severe, and she has endured many hospitalizations and surgeries and faces more in the future. It was reported to DFACS that law enforcement officers and other adults had previously returned the children to their home when they were found wandering outside, unattended. The two older children also had a number of unexcused school absences.
A case plan was developed for the mother, and we recognize that she did accomplish several of the goals in the case plan: she completed a series of parenting classes, obtained her GED, remained free of illegal drugs, visited her children fairly regularly, and permitted DFACS access to her home. But the case plan also required her to provide a safe, stable home for the children, obtain and maintain stable employment, follow the recommendations made in a psychological evaluation, resolve certain legal issues, and pay child support.
In addition, the juvenile court had warned the mother in an order entered after involvement by a citizens review panel that the children could not be returned to her if she was living with and dependent upon an illegal alien subject to deportation at any time. But when the termination petition was filed, the mother had not yet established her own stable home or stable employment. She was unemployed and still living with an illegal alien upon whom she was financially dependent, against the recommendations in the psychological evaluation and despite the warning of the court. She also had not yet resolved criminal charges pending against her resulting from the incident in which her youngest child, T.L.R., was attacked by the dog. The mother also had not paid child support as ordered and was in arrears.
Although she made some progress on her goals after the termination petition was filed, including moving into her own apartment,[1] paying some additional child support, and obtaining weekend night employment at a bar, she still did not have stable employment and remained in arrears on child support. Most of her previously unfulfilled goals remained unfulfilled, and the evidence supported a finding that the children remained deprived.
The psychological evaluations make clear that the cause of the children's deprivation is the mother's inability to parent them properly. Both the initial evaluation and one performed about a year later agreed that the mother displayed a personality disorder that creates an unhealthy dependence on men and causes her to avoid problems instead of dealing with them. This personality disorder is difficult to change and renders her unable to care properly for her children. In the opinion of one psychologist, the steps the mother had taken were positive; the other expert, however, viewed these same steps as negligible because the mother took them at the last possible moment. This indicated to the expert that the mother was still dealing with problems by avoiding them, even though in *144 this case her problems had stakes so high that she would lose her children.
In deciding whether the children's deprivation was likely to continue, the juvenile court was authorized to consider not only the experts' testimony but also the mother's past conduct. In the Interest of J.M.C., 201 Ga. App. 173, 174, 410 S.E.2d 368 (1991). The evidence presented amply supported the juvenile court's finding that the children's deprivation was likely to continue.
2. The experts also disagreed about the mother's prognosis. Their estimates regarding the time frame in which the children might be able to return to their mother's custody, assuming she faithfully attended therapy sessions and complied with all therapeutic suggestions for change, ranged from nine to twelve months to between two and three years. But the children's treating therapist testified that, in her opinion, the children were at a critical stage in their development, particularly the boy, J.S.G. She testified that the children needed permanence as soon as possible, preferably within three months, but within six months at the outside limit. It was her opinion that 12 months was definitely too long to wait.
In addition, the younger daughter, T.L.R., still has severe medical problems resulting from the dog attack and faces more hospitalizations and surgeries. In the opinion of her therapist, she requires far more attention than most children, both physically and emotionally. In the past, the mother was unreliable about visiting T.L.R. in the hospital or accompanying her to medical appointments. The mother also has had difficulty nurturing the children, and T.L.R. needs a great deal of support, hand-holding, affection, and attention. The child's therapist was "just real concerned about [the mother's] ability to attend to the very critical needs" of this child.
The evidence presented amply supports the juvenile court's finding that the mother's personality disorder causes her to be "unable or unwilling to place [the children's] needs above her own," as well as its conclusion that the children's continued deprivation would be likely to cause serious physical, mental, emotional, or moral harm to them.
3. In deciding that termination of the mother's parental rights was in the children's best interests, the court necessarily concerned itself with their crucial need for stability emphasized by their therapist and the DFACS caseworkers. These children have known little stability in their short lives. The three children have three different fathers, and indeed the father of the boy is unknown. They have bonded well with their foster parents. They are still adoptable, but they are fast approaching an age when they would not be considered adoptable.
Evidence was presented that the mother is currently unable to parent the children, and her prognosis is at best questionable. In determining the future of these children, a juvenile court cannot rely heavily on promises for the future that appear to be contrary to negative past fact. In the Interest of R.N., 224 Ga.App. 202, 205(2), 480 S.E.2d 243 (1997). The juvenile court concluded that termination of the mother's parental rights was in the best interests of these children. Id. That conclusion was supported by the evidence in this case, including the same factors that show the mother's inability.
Judgment affirmed.
POPE, P.J., and MILLER, J., concur.
NOTES
[1] The apartment is government-subsidized. The mother pays no rent and receives a supplement for utilities.