627 S.E.2d 101 (2006)
277 Ga. App. 454
In the Interest of D.B. et al., children.
No. A05A2338.
Court of Appeals of Georgia.
February 2, 2006.
*102 Wystan B. Getz, Decatur, for Appellants.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charissa A. Ruel, Assistant Attorney General, John J. Martin, Jr., Conyers, for Appellee.
MIKELL, Judge.
D.B.'s biological mother and C.B.'s biological father[1] appeal the juvenile court's order granting Rockdale County Department of Family and Children Services' ("DFACS") motion to extend temporary legal custody of both children and end reunification services. The trial court also granted permanent legal custody of C.B. to his biological mother. For the reasons set forth below, we affirm.
In reviewing an appeal from an order approving plans for nonreunification, this Court construes the evidence in favor of the judgment and determines whether a rational trier of fact could have found clear and convincing evidence that reunification services should not be provided. We neither weigh the evidence nor determine the credibility of witnesses; we defer to the juvenile court's factfinding and affirm unless the appellate standard is not met.[2]
So viewed, the evidence shows that at the time DFACS obtained emergency custody of eleven-year-old D.B. and twelve-year-old C.B. on January 30, 2004, appellants had been abusing alcohol and engaging in domestic violence in front of the children. On February 18, 2004, the juvenile court entered an order of adjudication finding that the children were deprived and continuing temporary custody with DFACS. The finding of deprivation was based upon appellants' abuse of alcohol and acts of violence in front of the children. In its order, the juvenile court recounted the couple's violent and abusive tendencies. In one incident, appellant-father called police because appellant-mother was intoxicated. Appellant-mother became belligerent and subsequently was arrested for obstruction. As the officer was leading appellant-mother away from the residence, she kicked appellant-father in the groin. In a second incident, appellant-mother pled guilty to battery for trying to stab appellant-father with a fork. In a third incident, appellant-father called police to the home, alleging that appellant-mother poured a beer on him. C.B.'s stepgrandmother reported that appellant-father slammed appellant-mother's head *103 against a car window and later pushed his finger into the back of D.B.'s neck, causing the child to fall forward against a wall. The children also told C.B.'s stepgrandmother that appellants left them alone in a hotel room in Florida during a family vacation when the parents got arrested. The juvenile court also reviewed the testimony of relatives and two school counselors, all of whom testified that D.B. and C.B. expressed concern about "going home." According to C.B.'s school counselor, he was "terrified of going home, . . . that he is afraid that someone is going to get hurt there." The juvenile court also noted that appellant-mother had been involved in an outpatient alcohol treatment program, but that her attendance was poor. Appellants did not appeal this order.
The juvenile court subsequently entered a disposition order incorporating a reunification plan prepared by DFACS and placing both children in the same foster home. Under the plan, appellants were required to complete a psychological evaluation and follow the recommendations; complete parenting classes; use nonemotionally-abusive methods of interacting with the children during visitation; obtain substance abuse and domestic violence assessments and follow the recommendations; submit to random drug screens; and remain alcohol and drug free for six consecutive months.
One month later, the court conducted a case review and entered an order continuing DFACS's custody of D.B. and awarding temporary custody of C.B. to his biological mother. On July 7, 2004, DFACS implemented another reunification case plan for appellants, which required compliance with the same goals contained in the previous plan. A judicial citizen review panel reviewed the case on July 15, 2004, and recommended that D.B. remain in foster care. On January 21, 2005, DFACS filed for a custody extension and a petition to end reunification, alleging that appellants failed to complete the goals of the reunification plan, that the children cannot be safely returned to the home, and that appellant-mother insists the children lied about the incidents which led to their removal. On January 24, 2005, the court entered provisional orders extending custody of both children pending a February 9, 2005, hearing on DFACS's petition. On January 31, 2005, DFACS sent summonses and process via certified mail to appellants' last known address. DFACS also attempted personal service, but appellants had moved. The summonses were returned to the juvenile court as undeliverable on February 8, 2005.
The juvenile court held a hearing on February 9, 2005, to consider extending custody with DFACS and the nonreunification petition. Neither appellants nor their attorney were present. The court inquired about notice to appellants. DFACS's attorney stated that personal service was attempted at appellants' last known address. He also noted that DFACS sent out copies of the petition via certified mail, which were returned as undeliverable. Counsel for DFACS explained that his office unsuccessfully attempted to contact appellants' attorney five times in December and January requesting an address for his clients. DFACS subsequently notified appellants' counsel via fax of the date and time of the hearing. One day prior to the hearing, appellants' counsel sent a return fax noting appellants' new address. Counsel for DFACS advised the court that appellants continuously have refused to provide their current address to the court, the citizen review panel, or DFACS. The court elected to proceed with the hearing, finding that reasonable efforts had been made to serve appellants. The court noted that appellants had a longstanding relationship with the court and DFACS, and that they "[chose] to secrete themselves." The court further admonished appellants' counsel, finding that his eleventh-hour response shows that he "wants to set up the matter . . . so that [appellants are] not brought before the [c]ourt."
Tawana Ford, a DFACS caseworker, testified that appellant-mother had successfully completed the substance abuse requirement of the case plan goals, but that appellants had failed to comply with others, including failure to complete parenting classes and failure to get counseling to deal with domestic violence. Ford testified that appellants visited D.B. and C.B. three times in May and June 2004. She described the visits as a *104 "disaster." In June 2004, appellants failed to show up for a visit with D.B. Other times, D.B. and C.B. walked out because appellants refused to accept responsibility for any wrongdoing and blamed the children for their involvement with DFACS. When Ford attempted to schedule additional visits, appellants responded that "they [will not] jump through any more hoops with DFACS." Ford and another caseworker confirmed that D.B. and C.B. were doing well in their respective placements and at school.
Appellants and their attorney arrived at the hearing during Ford's testimony. After the court admonished appellants and their attorney for being late, the following exchange occurred between the court and appellants' counsel:
The Court: I think the hearing was noticed for [1:00]?
Unidentified Female Speaker: 1:30.
The Court: 1:30.
[Counsel]: I didn't get a notice. What I got was from [DFACS's counsel], that it was at 2:00. If it was 1:30, then, obviously, I'm in error. I just went by what was sent to me.
The Court: All right.
[Counsel]: What can I say?
The Court: Nothing.
DFACS's counsel then explained that he did not mislead appellants' counsel, after which the court instructed counsel to "[g]o ahead with the hearing." Appellant-mother later testified that she advised DFACS that she and appellant-father had moved, but did not provide a new address because "I have other legal issues where I really prefer that nobody knows where I reside." Following this testimony, the trial court noted that appellant-mother does not want to cooperate with DFACS and that he had never had a parent refuse to give DFACS an address.
Sharon Hudson, a former caseworker, testified that appellants do not want the children to return home.
Dr. Charles Nord, a licensed clinical psychologist hired by DFACS to evaluate appellants and to provide counseling to D.B. and C.B., testified that the children do not want to see their parents. Appellants told Nord that the children lied to DFACS about a history of alcohol abuse and domestic violence; however, Nord testified that police reports confirm the children's version of events. He did not recommend reunification because of the children's anger about appellants' alcohol abuse and domestic violence.
Appellant-mother testified that she and appellant-father started, but did not complete, in-home counseling because of "what transpired during the conversations" with the therapist. She also stated that they did not attend parenting classes because the program recommended by DFACS was designed for expectant parents and parents of infants. When asked if she wants D.B. to return home, appellant-mother stated, "[n]ot with the monster that he's been created into right now, no." She maintained that the children had attitude problems and that she wanted them to return home "once they get their get straightened out." Appellant-father similarly testified that he did not want C.B. to return home at this time and blamed DFACS for not providing C.B. with sufficient counseling.
The trial court entered a written order on February 25, 2005, granting DFACS's motions for an extension of custody and for nonreunification, finding that appellants had failed to complete their case plan and did not want to pursue reunification with the children. The trial court awarded permanent legal custody of C.B. to his biological mother and indicated that D.B.'s permanency plan was placement with a fit and willing relative.
1. Appellants first contend that the February 9, 2005, hearing was a nullity because service of process was not perfected under OCGA § 15-11-39.1(a). We disagree.
Pretermitting whether service was defective, the record reflects that appellants waived any defect in service. "A party can waive defects in service of process unless an objection is made at the first practicable opportunity."[3] Appellants' attorney never *105 objected to the hearing on the grounds of insufficiency of service of process. Pointing to the above-cited exchange between appellants' counsel and the court, appellants contend that the court did not allow them to object. This contention is wholly without merit. The exchange between appellants' counsel and the court concerned counsel's allegation that DFACS misled him about the timing of the hearing. The exchange had nothing to do with defective service. Appellants' counsel should have placed any objections he had to the service of process on the record before proceeding to cross-examine DFACS's witnesses. "[B]y failing to raise the issue at the . . . hearing, [appellants] waived the issue of insufficiency of process or service of process."[4] "It was [appellants'] obligation to bring the affirmative defense to the attention of the court at the proper time if [they] wished to make an issue of it."[5] Further, the record reflects that appellants personally appeared and testified at the hearing, and that they deliberately chose to conceal their new address.
2. Appellants' next contention, that the juvenile court erred by failing to hold a hearing on DFACS's motion to extend custody within 12 months of the first deprivation order as required by OCGA § 15-11-58(k), has been waived. The record reflects that DFACS obtained emergency custody of the children on January 30, 2004. On January 21, 2005, DFACS filed its motion for custody extension and a petition to end reunification, noting that the order of January 30, 2004, was set to expire on January 29, 2005. On January 24, 2005, five days before expiration of the original order, the juvenile court entered a provisional order extending custody pending a hearing on February 9, 2005, "provided there is no objection filed by the guardian or parent within 7 days of the date hereof." By failing to object to the provisional order, and by participating in the hearing without objection, appellants have waived the right to challenge any procedural defect.[6]
3. Appellants argue that the juvenile court erred in extending custody because the evidence showed that appellants had remedied the issues of alcohol abuse and domestic violence. Appellants contend that in order to extend custody, DFACS would need to show evidence of continued alcohol abuse and domestic violence. We disagree.
Pursuant to OCGA § 15-11-58(n)(3), an extension of custody in cases such as this must be "necessary to accomplish the purposes of the order extended." The purpose of the deprivation order was to place the deprived children in a safe environment. In its order extending custody, the court found that the children could not safely return to the home because appellants had not addressed their issues with violence and abuse, and had failed to comply with their case plan goals. The court's findings are supported by the evidence.
Even though appellant-mother successfully completed the substance abuse requirement of the case plan, appellants failed to complete parenting classes or domestic violence counseling, and refused to accept responsibility for the family's situation. Appellants resisted DFACS's attempts to schedule visits with the children; stated that they would not "jump through any more hoops with DFACS"; and consistently denied any wrongdoing. During the hearing, both parents told the court that they did not want the children to return home. Clear and convincing evidence supported the juvenile court's findings underlying the order to extend custody.
4. In their final enumeration, appellants contend that evidence of noncompliance with their case plan was insufficient to support the juvenile court's order approving nonreunification. We disagree.
In order to approve [DFACS's] recommendation that a reunification plan is not appropriate, a juvenile court must determine by clear and convincing evidence that reasonable efforts to reunify a child with his *106 or her family will be detrimental to the child. OCGA § 15-11-58(h).[7]
"There shall be a presumption that reunification services should not be provided if the court finds by clear and convincing evidence that . . . [t]he parent has unjustifiably failed to comply with a previously ordered plan designed to reunite the family."[8]
Applying the appropriate standard of appellate review, we find that the evidence amply supports the juvenile court's decision to grant DFACS's motion for nonreunification. As discussed above, appellants failed to complete their case plan goals and gave numerous excuses for their noncompliance. Appellants refused to cooperate with DFACS's attempts to schedule visitation with their children and displayed little desire to reunite with their children. These failures, coupled with appellants' complete denial of responsibility for the children's dangerous and insecure environment, supported the juvenile court's decision that reunification would be detrimental to the children.
Judgment affirmed.
ANDREWS, P.J., and PHIPPS, J., concur.
NOTES
[1] C.B. was born to appellant-father on August 21, 1991. C.B.'s biological mother was awarded custody of C.B. following her divorce from appellant-father in November 2001. D.B. was born to appellant-mother on March 5, 1992. Appellant-mother and D.B.'s biological father were not married. Appellants were married in March 2003. C.B. moved into appellants' home in July 2003; D.B. had been living with appellants since their marriage.
[2] (Citation and punctuation omitted.) In the Interest of J.B., 274 Ga.App. 20, 619 S.E.2d 305 (2005).
[3] (Citation and punctuation omitted.) In the Interest of D.R.W., 229 Ga.App. 571, 574(2), 494 S.E.2d 379 (1997).
[4] In the Interest of S.J.M., 225 Ga.App. 703, 705, 484 S.E.2d 764 (1997).
[5] (Citation and punctuation omitted.) In the Interest of D.R.W., supra at 575(2), 494 S.E.2d 379.
[6] See In the Interest of T.D.B., 266 Ga.App. 434, 442(3)(c), 597 S.E.2d 537 (2004).
[7] (Footnote omitted.) In the Interest of R.N.R., 257 Ga.App. 93(1), 570 S.E.2d 388 (2002). See also In the Interest of B.D.G., 262 Ga.App. 843, 586 S.E.2d 736 (2003).
[8] OCGA § 15-11-58(h)(1).