647 S.E.2d 300 (2007)
In the Interest of R.B. et al., children.
In the Interest of R.B., a child.
Nos. A07A0345, A07A0346.
Court of Appeals of Georgia.
May 25, 2007.
*301 Kris-Ann Stanley, for appellant (case no. A07A0345).
Jeanne C. Davis, for appellant (case no. A07A0346).
Thurbert E. Baker, Attorney General, Atlanta, Shalen S. Nelson, Senior Assistant Attorney General, E. Paul Stanley, for appellee.
BERNES, Judge.
In Case No. A07A0345, the mother of two-year-old R.B. and eight-year-old M.C.S. appeals the order of the Juvenile Court of Towns County extending custody of the children with the Towns County Department of Family and Children Services ("DFCS"). In Case No. A07A0346, the father of R.B. appeals from the same order. For the reasons that follow, we affirm in both cases.
The record shows that the juvenile court issued an order for emergency shelter care of R.B. and M.C.S. on July 8, 2005 following allegations that the children were being mistreated. The mother and father waived the 72-hour hearing, and on August 26, 2005, DFCS filed a deprivation petition seeking temporary custody of the children. Following a September 20, 2005 hearing, the juvenile court entered a consent order of adjudication and disposition finding R.B. and M.C.S. to be deprived and awarding temporary custody of the children to DFCS.
The juvenile court concluded that as to the father, the cause of deprivation of R.B. was the father's incarceration. As to the mother, the causes of the children's deprivation were substance abuse, her failure to provide adequate *302 housing, and "inappropriate parenting choices." The juvenile court directed that the permanency plan for the children be reunification with the parents. To that end, the juvenile court held that before reunification could be achieved, the court must find that all elements of the parents' reunification case plans had been completed sufficient to remove the risks to the children. This order was not appealed.
On November 3, 2005, DFCS filed a motion for court review and contempt as to the mother, and on December 13, 2005, the mother filed a motion for the return of custody of the children. Following hearings on both motions on January 24, 2006 and February 22, 2006, the juvenile court entered orders finding, among other things, that the mother had not complied with her case plan in that a drug screen test had come back as a diluted sample, that she had tested positive for marijuana six times in the previous six months, and that she had refused a drug test. Consequently, the juvenile court ordered that the children remain in temporary custody of DFCS. These orders were not appealed.
On June 13, 2006, DFCS filed a petition for extension of temporary custody. A hearing on the petition was held before the juvenile court on July 24, 2006, at which the mother and father were present and represented by counsel. The mother testified that she was then living in Florida with the father, who had been released from prison the previous month. She moved from Georgia in April 2006, stayed with her parents for a month, and then leased a residence in Ruskin, Florida. She was currently employed in the management training program at a Cracker Barrel restaurant.
Although her case plan required that the mother have six months of clean drug screens, the mother admitted that she had not complied with this requirement. In particular, she acknowledged that she had tested positive twice in November 2005 for marijuana; that she had submitted diluted test samples on February 17 and February 22, 2006; that her hair follicle test showed positive for marijuana on March 2, 2006; and that she had refused to take a drug test a few weeks before the hearing.
The caseworker testified that the mother had made progress on several elements of her case plan. The mother had completed a parenting class, and before moving to Florida, had achieved six months of stable housing and had demonstrated almost six months of stable employment. The mother had also obtained psychological, anger management, and domestic family violence assessments, as required by the case plan. However, according to the caseworker, the mother continued to have problems with her drug screens. The mother's case plan also required that she resolve her legal issues, which included outstanding charges in North Carolina of breaking and entering and conspiracy to commit larceny, but that case had not been resolved.
The father testified that he had been on probation in Florida in relation to a 2004 cocaine possession charge. He was arrested in August 2005 for obstruction of justice, which violated his probation. The father served nine months in jail for the probation violation, was released in late June 2006, and then moved in with his wife in Ruskin. He began working soon after his release. In his testimony, the father characterized himself as "bipolar with an explosive intermittent disorder." According to the father, he had exhausted his supply of one of his prescribed medications and had not taken any in a week, and he had a ten to fifteen-day supply of another medication.
The caseworker testified that the father's progress on his case plan included the completion of parenting and domestic violence classes. The father had not completed, among other things, a psychological evaluation, stable housing, a substance abuse assessment, and six months of clean drug screens.
The record also includes a court-appointed special advocate report filed in open court on the date of the original deprivation hearing containing a number of admissions made by the father to the reporting agent, including that the father admitted to smoking marijuana daily, that he could not keep a job because of his bad temper, and that "I can't control myself."
*303 Following the hearing on DFCS's petition to extend temporary custody, the juvenile court extended temporary custody and control of R.B. and M.C.S. with DFCS for an additional year. The juvenile court concluded that the children continued to be deprived and that an extension of the consent order placing the children in DFCS custody was necessary to accomplish the purposes of the original order. According to the court, immediate reunification with the mother was not feasible because, among other things, she had failed to complete her case plan and did not have six months of clean drug screens. Immediate reunification with the father was not feasible because he had failed to complete his case plan, was not taking his prescribed medication, and was residing with the mother.

Case No. A07A0345
1. The mother contends that the juvenile court erred in extending custody of her children with DFCS because the evidence was insufficient to support a conclusion that the children continued to be deprived. We disagree.
Pursuant to OCGA § 15-11-58(n)(3), "[a] court which adjudicates a child deprived may extend the temporary custody order for an additional 12 months if, after satisfying certain procedural requirements, the court finds that the extension is necessary to accomplish the purposes of the original order." In the Interest of J.W., 271 Ga.App. 518, 519, 610 S.E.2d 144 (2005). The original order's purpose was to place the children in a safe environment while the mother was afforded the opportunity to complete elements of her reunification case plan sufficient to demonstrate that the risks to the children had been removed. See In the Interest of D.B., 277 Ga.App. 454, 459(3), 627 S.E.2d 101 (2006); In the Interest of J.W.H., 245 Ga.App. 468, 469(1), 538 S.E.2d 112 (2000). That the mother needs additional time to accomplish this purpose is amply supported by the evidence. While she has made substantial progress on elements of her case plan, evidence shows that she failed to complete several important goals. Notably, she continued to fail her drug screens, and she sometimes refused to take the tests and other times attempted to obfuscate the results. The evidence also showed that she had failed to achieve at least one other element of her case plan by failing to demonstrate six months of stable employment. Further, the juvenile court was entitled to infer an adverse impact on the children if they were returned to her in view of the evidence of her chronic use of illegal drugs. See In the Interest of K.W., 279 Ga.App. 319, 321, 631 S.E.2d 110 (2006). Clear and convincing evidence supported the juvenile court's conclusion that extension of the original deprivation order was necessary to accomplish its purpose. See In the Interest of D.B., 277 Ga.App. at 459(3), 627 S.E.2d 101 (trial court's finding that the children could not be safely returned to the home because parents had failed to comply with the case plan goals was supported by the evidence); In the Interest of J.W.H., 245 Ga.App. at 469(1), 538 S.E.2d 112 (considering father's failure to achieve reunification plan goals and safe environment in affirming court's extension of deprivation order).
Clear and convincing evidence also supported the juvenile court's conclusion that R.B. and M.C.S. were deprived. A deprived child includes a child who "[i]s without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals." OCGA § 15-11-2(8)(A). That R.B. was deprived at the time of the unappealed consent order is not subject to challenge. In the Interest of J.W., 271 Ga.App. at 520, n. 1, 610 S.E.2d 144. Given that the mother failed to complete her reunification case plan and the evidence of her continued chronic drug abuse, the juvenile court was entitled to conclude that the children would continue to be deprived if they were returned to the mother. See In the Interest of A.S.R.H., 265 Ga.App. 30, 32(1), 593 S.E.2d 59 (2004); In the Interest of D.W.A., 253 Ga.App. 346, 348-349, 559 S.E.2d 100 (2002); In the Interest of J.S.G., 242 Ga.App. 387, 388-389(1), 529 S.E.2d 141 (2000). Compare In the Interest of J.M., 256 Ga.App. 745, 748, 569 S.E.2d 628 (2002) (where DFCS had failed to gather any evidence as to the mother for over a year, *304 the evidence did not show the effect on the children if they were returned to her care).
2. The mother also contends that the juvenile court erred in finding that the children could not be returned to the mother in Florida without compliance with the Interstate Compact on the Placement of Children ("ICPC"). See OCGA § 39-4-1 et seq. The mother's argument is expressly premised upon DFCS's custody of the children having expired due to an erroneous extension of the deprivation order. Thus, the mother contends, she could bring the children to live with her in Florida without regard to the application of the ICPC. See OCGA § 39-4-4, Article VIII ("This compact shall not apply to: (a) The sending or bringing of a child into a receiving state by his parent. . . ."). However, because the juvenile court did not err in extending the custody order, the ICPC continued to apply. See OCGA § 39-4-4, Art. V(a) (sending agency retains jurisdiction "which it would have had if the child had remained in the sending agency's state, until the child is adopted, reaches majority, becomes self-supporting or is discharged with the concurrence of the appropriate authority in the receiving state"); Adoption of Warren, 44 Mass.App.Ct. 620, 693 N.E.2d 1021, 1024 (1998) (where department of social services retained temporary custody of the child, the child was not sent to other state by the father so as to fall within the Article VIII exemption). We find no error.

Case No. A07A0346
3. The father of R.B. contends that the evidence was insufficient to show that R.B. was a deprived child and in need of continuing intervention by the State.[1] We disagree.
The purpose of the original temporary custody order was to place R.B. in a safe environment while the father worked on his reunification case plan. See In the Interest of D.B., 277 Ga.App. at 459(3), 627 S.E.2d 101; In the Interest of J.W.H., 245 Ga.App. at 469(1), 538 S.E.2d 112. Although the father made substantial progress on his case plan while incarcerated, he was unable to complete a number of important goals, including establishing stable housing, completing a substance abuse assessment, and demonstrating six months of clean drug screens. Extension of temporary custody of R.B. with DFCS allowed the father time to complete his case plan. Further, as the father was living with the mother, who evidence showed to be an unrehabilitated drug user, the trial court was authorized to conclude that R.B. would not be in a safe environment if he was returned to the father. See, e.g., In the Interest of T.J., 281 Ga.App. 308, 313(1), 636 S.E.2d 54 (2006) (children's exposure to spouse with substance abuse problem considered in finding deprivation likely to continue). Accordingly, clear and convincing evidence supported the juvenile court's conclusion that extension of the original deprivation order was necessary to accomplish its purpose. See In the Interest of J.W.H., 245 Ga.App. at 469(1), 538 S.E.2d 112.
The father nevertheless contends that clear and convincing evidence did not support the trial court's finding that R.B. was deprived. We disagree. R.B.'s deprivation was established at the time of the unappealed consent order. In the Interest of J.W., 271 Ga.App. at 520, n. 1, 610 S.E.2d 144. The father argues, however, that no evidence showed that R.B. was deprived at the time of the hearing on DFCS's petition to extend the temporary custody order. In particular, he contends that he had been released from jail and obtained work and housing, and that no evidence showed that he was presently incapable of caring for his son.
It is well established that "[t]he juvenile court is not required to reunite the [child] with [the parent] in order to obtain current evidence of deprivation or neglect." (Citation and punctuation omitted.) In the Interest of L.G., 273 Ga.App. 468, 474(2)(c), 615 S.E.2d 551 (2005). The juvenile court was entitled to consider the father's failure to complete his case plan and R.B.'s exposure to his mother's continuing drug abuse as evidence that R.B.'s deprivation was likely to continue if returned to the father. See In the Interest of T.J., 281 Ga.App. at 313(1), 636 S.E.2d 54; In the Interest of D.W.A., 253 *305 Ga.App. at 348-349, 559 S.E.2d 100; In the Interest of J.S.G., 242 Ga.App. at 388-389(1), 529 S.E.2d 141. This distinguishes this case from In the Interest of J.P., 280 Ga.App. 100, 105(2), 633 S.E.2d 442 (2006), in which the father had "completed every aspect of his case plan." The juvenile court was entitled to conclude that clear and convincing evidence showed that R.B. would continue to be deprived if he was returned to the father.
4. The father contends that the juvenile court erred in finding that he was given reasonable notice of the factual basis of the motion. We disagree.
An extension of the original deprivation order required, among other things, that the juvenile court conduct a hearing on DFCS's motion to extend and that the father be given "[r]easonable notice of the factual basis of the motion and of the hearing and opportunity to be heard." OCGA § 15-11-58(n)(1), (2). The petition for extension of temporary custody alleged, among other things, that R.B. was deprived because the father had not made any progress toward the completion of his case plan, and that R.B. would be deprived if returned to his parents. While the father complains that he was not notified that his mental health issues would be addressed at the hearing, he was notified that completion of his case plan was at issue and his case plan included a requirement that he undergo a psychological evaluation. The trial court did not err in finding that the notice was sufficient. See, e.g., In the Interest of D.C., 268 Ga.App. 882, 884-885(1), 602 S.E.2d 885 (2004) (although matters for which child found to be deprived were not specifically alleged in the petition, notice to the mother was sufficient under principles of notice pleading) (physical precedent only).
5. The father further claims that the juvenile court erred in admitting certain lay testimony relating to the father's prescription medicine and mental health, and then by considering the testimony to conclude that the father was an unfit parent without taking his medicine. Pretermitting whether the evidence was properly admitted, we agree with the father that the juvenile court's finding that the father was presently unfit for failing to take his medications was not supported by the evidence. According to the father, he had an anxiety attack when he was in prison and was prescribed Vistaril to treat the anxiety. He could not tell any difference since he ran out of his supply of Vistaril the week before the extension hearing and stopped taking the medicine. The father also testified that he was taking his other prescribed medication and intended to seek a refill of his medications. The father admitted that taking his medications was "something that I need to do." However, there was no evidence, medical or otherwise, showing that the father's ability to parent R.B. was impacted by his failure to take his anxiety medication, and the juvenile court erred in finding that the father was not a fit parent without taking his medications on the evidence presented. See, e.g., In the Interest of K.S., 271 Ga.App. 891, 893, 611 S.E.2d 150 (2005) (no competent evidence of mother's present mental impairment). Nevertheless, the juvenile court's finding that R.B. was deprived and that the extension of R.B.'s temporary custody with DFCS was necessary to fulfill the purpose of the original order was otherwise supported by clear and convincing evidence, as discussed supra in Division 3. The trial court's error was thus harmless. See In the Interest of S.L.B., 265 Ga.App. 684, 689(2), 595 S.E.2d 370 (2004).
6. The father argues that the trial court erred in concluding that adherence to the ICPC was required before R.B. could be returned to his custody. The argument is essentially the same as made by the mother, which is that the child is no longer deprived and R.B. should be returned to the father free from any restrictions imposed by the ICPC. For the same reasons as set forth in Division 2, we find no error.
Judgment affirmed.
BLACKBURN, P.J., and RUFFIN, J., concur.
NOTES
[1] The father of M.C.S. did not appeal the order and is not a party to this appeal.