662 S.E.2d 358 (2008)
In the Interest of Q.H., a child.
No. A08A0558.
Court of Appeals of Georgia.
May 20, 2008.
Hollowell, Foster & Gepp, Jolanda Evon Herring, Shawn Darryl McAllister, for Appellant.
Thurbert E. Baker, Atty. General, Shalen S. Nelson, Senior Asst. Atty. General, Kathryn Ann Fox, Asst. Atty. General, for Appellee.
MIKELL, Judge.
The mother of 14-year-old Q.H. appeals the juvenile court's order extending temporary legal custody of the child with the Georgia Department of Human Resources, acting by and through the Fulton County Department of Family and Children Services ("DFCS"). The mother claims that the juvenile court erred in granting the motion to extend. She also contends that the juvenile court committed reversible error in considering hearsay evidence. For the reasons set forth below, we disagree and affirm.
Viewed in a light most favorable to the juvenile court's findings, the evidence shows the following. DFCS filed a deprivation complaint against the mother on June 14, 2006, alleging that the mother was physically abusing then 12-year-old Q.H. On June 16, 2006, the juvenile court entered an order finding that there was probable cause to determine that Q.H. was a deprived child. The mother consented to the placement of temporary legal custody of Q.H. with DFCS. DFCS filed another deprivation petition on June 21, 2006, alleging among other things that Q.H. was a victim of physical and sexual abuse. The juvenile court entered a scheduling order on June 29, 2006, setting a hearing for submission of a case plan, six months citizen's panel review, and an annual permanency *359 hearing.[1] The mother filed a motion on February 1, 2007, to "modify petition," asking that the child be placed with the mother.
Q.H. underwent a psychological evaluation on May 2, 2007. Two psychologists reported that the child had "a long history of lying, sexual preoccupation, and disruptive, sexualized, and at times, violent behavior," and that she reported a history of sexual abuse. The psychologists recommended that Q.H. be placed in a residential treatment facility. They further recommended that the child not be placed with the father, and that such a placement not be considered until, among other things, the father completed parenting classes and passed a home evaluation, and Q.H. showed significant improvement in her treatment.
The juvenile court held a hearing to consider the mother's modification motion on March 21, 2007. Included in documents entered into evidence was a letter written by Q.H.[2] The child wrote, among other things, that when she told her mother she had lost her virginity that the mother called her a "nasty hoe," and suggested, "you should've charged him." In ruling on the modification motion, the juvenile court found that the child threatened to kill herself if she was returned to the mother's home. The court also found that after being placed in DFCS custody the child had been moved six times, run away twice, and acquired a communicable disease. The court concluded that, due to the child's mental health issues, returning the child to the home would not be in her best interest, and ordered that custody remain with DFCS.
On May 22, 2007, DFCS filed a motion to extend its legal custody of the child. At the June 26, 2007, evidentiary hearing on the motion, the child's caseworker testified that the child could not be safely returned to the mother. According to the caseworker, the mother had completed most of her reunification case plan goals but had not completed family therapy. The mother's therapist had concluded that the mother and Q.H. were not ready for therapy because a couple of visits between the two had been "very bad." The caseworker had observed the child and mother interact, and testified that the mother was manipulative, giving as examples that the mother told the child that she would never live with her father, if any harm came to the mother that the child would be the primary suspect, and that the child was "acting like a whore." The mother and Q.H. stopped visiting in April 2007, because the child adamantly maintained that she did not want to see her mother.
According to the caseworker, Q.H. had run away from her foster placement twice in the period following the previous hearing. Q.H. told the caseworker she ran away because she was fearful of going back to her mother's care. Q.H. was placed with her father on June 7, 2007. Since physical placement with her father, Q.H. was, as described by the caseworker, "almost a different child. . . . She's really, really happy and she hasn't acted out."
The mother testified that although Q.H. came into DFCS custody with a black eye, she "did not blacken the child's eye." According to the mother, she found the child on the telephone propositioning a man to perform fellatio. The mother admitted to then slapping the child, but maintained that Q.H. reacted by intentionally exaggerating a fall, resulting in her face hitting the side of the bed.
The mother also testified that while the child was in DFCS custody she had communicated with Q.H. over the internet. The mother posed as a 20-year-old man named "Ricky Shapiro" so that the child would not realize she was exchanging messages with her mother. Posing as Shapiro, the mother *360 pretended to have witnessed a sexually graphic event involving another "chick" with the same name, "Cherri," that Q.H. was using. The statements, which the mother admitted were inappropriate, were made "to gauge" how Q.H. would respond. The mother's testimony also showed that, acting as Shapiro, she was able to persuade Q.H. to remove suggestive photographs the child had posted on-line.
The juvenile court subsequently entered an order finding that the mother had substantially completed her case plan, but that Q.H. continued to be a deprived child, and that an extension of temporary legal custody with DFCS was necessary to accomplish the purposes of the original order.
1. The mother claims that the juvenile court erred in granting DFCS's motion to extend custody. A court's order removing the child from the child's home may be extended, "for an additional 12 months if, after satisfying certain procedural requirements, the court finds that the extension is necessary to accomplish the purposes of the original order."[3] The mother challenges the juvenile court's finding that Q.H. remains deprived, and she argues that because she completed her case plan that no evidence presented by DFCS justified its retention of the child for an additional 12 months. We disagree.
Any rational trier of fact could have found by clear and convincing evidence that Q.H. was deprived and in need of the continued protection of the court.[4] "Under Georgia law, a child is deprived if the child is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals."[5] In its findings of fact, the juvenile court cited in particular that the mother's on-line contact with her daughter in the guise of Ricky Shapiro showed that the mother had failed to refrain from abusing the child. The mother claims that this could not have been parental abuse because the child was not aware that she was speaking with her mother, and that the mother was using effective parenting techniques in convincing Q.H., through the mother's on-line persona, to remove the photographs that the child had posted on the internet. We are unpersuaded.
The definition of a deprived child focuses not only on the child's physical health, but on the lack of care and control necessary for the child's mental and emotional health and morals.[6] The mother intentionally subjected her child to an outrageously graphic description of group oral sex. We fail to see how creating the illusion for the child that she was interacting with a 20-year-old man somehow mitigates the mother's actions. The juvenile court was entitled to conclude that the mother was continuing to abuse the child, especially considering evidence that the child was particularly vulnerable to sexually inappropriate behavior.[7] The mother's conduct during visitation with the child was also probative of whether she would act abusively toward her daughter if she were returned to her custody. "It is well established that the juvenile court is not required to reunite the child with the parent in order to obtain current evidence of deprivation or neglect."[8] Accordingly, the juvenile court *361 was entitled to find by clear and convincing evidence that Q.H. continued to be a deprived child.
The fact that the mother had substantially completed her reunification case plan does not mandate that the child be returned to her custody. The purpose of temporarily removing Q.H. from the mother's custody was to place the child in a safe environment while the mother was given the opportunity to demonstrate that the risks to the child had been removed through completion of her reunification case plan.[9] However, the evidence showed that the mother continued to abuse Q.H. while the child was in DFCS custody, and that the risks to the child posed by the mother had not been removed, notwithstanding any technical compliance by the mother with substantial portions of the case plan. Thus, this case is distinguishable from In the Interest of J.P.,[10] where we concluded that the juvenile court erred in extending temporary custody with DFCS where the father had completed every aspect of his case plan, and the only negative testimony about the father was that he had showed a lack of candor about a relationship with a woman.[11] "The juvenile court's primary responsibility is to consider and protect the welfare of children whose well-being is threatened."[12] As the juvenile court's order recites, the permanency plan remained reunification and DFCS continued with reasonable efforts to finalize the plan. Accordingly, we conclude that clear and convincing evidence supported the juvenile court's finding that extension of custody with DFCS was necessary to accomplish the purposes of the original order.[13]
2. The mother also contends that the juvenile court erred in considering the hearsay testimony of Dr. Heather Corkins. The state introduced an e-mail from Dr. Corkins, who did not testify, showing that she had visited with the father and was comfortable recommending that Q.H. remain with the father in order to ascertain if the child "can stabilize" in that environment. The mother argues that Dr. Corkins's out-of-court statement was hearsay and therefore not competent evidence.[14] However,
in all proceedings involving custody of a child, all information helpful in determining the questions presented, including oral and written reports, may be received by the court and relied upon to the extent of its probative value even though not otherwise competent in the hearing on the petition.[15]
"To the degree any such information contained hearsay, the courts are presumed to have disregarded it."[16] Furthermore, even without the e-mail, "ample evidence supported the juvenile court's decision to extend the deprivation order."[17] The mother shows no reversible error.
3. The mother also contends that the trial court erred in making certain other findings of fact. However, "[a]s a rational trier of fact could have found that clear and convincing evidence supported the key findings referenced in Division 1 above, we need not address each of the other secondary findings *362 contested by the [mother]."[18]
Judgment affirmed.
SMITH, P.J., and ADAMS, J., concur.
NOTES
[1] In her appellate brief, the mother contends that the juvenile court entered the order sustaining the deprivation petition on June 29, 2006, which is consistent with DFCS's petition to extend custody and the juvenile court's order extending custody. The only order of that date in the record appears to be the scheduling order. However, it is not disputed that Q.H. was adjudicated to be a deprived child and that temporary custody of the child was placed with DFCS.
[2] Evidence submitted at the March 2007, hearing was considered by the juvenile court in ruling on the motion to extend.
[3] (Citation and punctuation omitted.) In the Interest of R.B., 285 Ga.App. 556, 559(1), 647 S.E.2d 300 (2007). See OCGA § 15-11-58(n)(3).
[4] See In the Interest of J.W., 271 Ga.App. 518, 519, 610 S.E.2d 144 (2005) ("On appeal from a determination that a child is deprived, we review the evidence in the light most favorable to the juvenile court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the child was deprived") (citation omitted).
[5] (Citation and footnote omitted.) In the Interest of M.L.C., 249 Ga.App. 435, 436(2), 548 S.E.2d 137 (2001). See OCGA § 15-11-2(8)(A).
[6] Id.
[7] See OCGA § 15-11-94(b)(4)(B)(iv) ("[i]n determining whether the child is without proper parental care and control, the court shall consider, without being limited to, the following: . . . [e]gregious conduct . . . of the parent toward the child . . . of a physically, emotionally, or sexually cruel or abusive nature").
[8] (Citation and punctuation omitted.) In the Interest of R.B., supra at 561(3), 647 S.E.2d 300.
[9] See id. at 559(1), 647 S.E.2d 300; In the Interest of D.B., 277 Ga.App. 454, 459(3), 627 S.E.2d 101 (2006); In the Interest of J.W.H., 245 Ga.App. 468, 469(1), 538 S.E.2d 112 (2000).
[10] 280 Ga.App. 100, 633 S.E.2d 442 (2006).
[11] Id. at 105(2), 633 S.E.2d 442.
[12] (Citation omitted.) In the Interest of T.J., 273 Ga.App. 547, 549, 615 S.E.2d 613 (2005). See OCGA § 15-11-1(1).
[13] See In the Interest of J.W.H., supra at 470(1), 538 S.E.2d 112 (clear and convincing evidence supported juvenile court's order to extend custody).
[14] See generally In the Interest of M.L.P., 231 Ga.App. 223, 224-225, 498 S.E.2d 786 (1998).
[15] OCGA § 15-11-56(a).
[16] (Citation and punctuation omitted.) In the Interest of T.A.M., 280 Ga.App. 494, 499(3), 634 S.E.2d 456 (2006).
[17] In the Interest of B.B., 267 Ga.App. 360, 361(1), 599 S.E.2d 304 (2004).
[18] In the Interest of J.W.H., supra at 471(4), 538 S.E.2d 112.