975 So.2d 927 (2006)
D.B. and T.B.
v.
M.A.
D.B. and T.B.
v.
M.A.
2050034 and 2050277.
Court of Civil Appeals of Alabama.
September 29, 2006.
Rehearing Denied December 22, 2006.
*929 B. Andrew Whitmire, Jr., Birmingham; and Edwin K. Livingston, Montgomery, for appellants.
Carey W. Spencer, Jr., Birmingham; and Linda L. Cole, Birmingham, for appellee.
Troy King, atty. gen., and Sharon E. Ficquette and David S. Smith, asst. attys. gen., for amicus curiae Department of Human Resources, in support of the appellee.

On Applications for Rehearing
CRAWLEY, Presiding Judge.
This court's opinion issued on May 26, 2006, is withdrawn, and the following is substituted therefor.
These appeals arise from consolidated proceedings involving an adoption action and an action to register and enforce a child-custody judgment entered by a Nebraska trial court. These appeals are before this court after numerous proceedings in three different courts in Alabama  a probate court, a juvenile court, and a family court  with accompanying orders from no less than five Alabama judges, in addition to proceedings in a Nebraska trial court. M.A. ("the father") is a Nebraska resident and the father of B.B., the child at issue in this action ("the child"). In an effort to obtain custody of the child, who was removed from Nebraska without the father's consent, the father has sought to register and enforce in Alabama a child-custody *930 judgment entered by a Nebraska trial court. D.B. and T.B. ("the adoptive couple"), who currently have physical custody of the child, are Alabama residents who wish to adopt the child. We hold that Nebraska has subject-matter jurisdiction to determine the child's custody; that the Nebraska judgment at issue should not have been registered in Alabama; and that because the adoptive couple were not served with process in the Nebraska proceeding, the Nebraska judgment does not comply with the Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A and 42 U.S.C. § 663 ("the PKPA"), or Alabama's version of the Uniform Child Custody Jurisdiction and Enforcement Act, § 30-3B-101 et seq., Ala.Code 1975 ("the UCCJEA"), and therefore is not enforceable in Alabama. However, we reiterate that any substantive proceedings in this case must be conducted in Nebraska.

I. Factual Background
On January 21, 2004, the child was born in Nebraska. Several days later, on January 25, 2004, the child was placed by his mother, M.T. ("the mother"), who is a resident of Nebraska, into the physical custody of the adoptive couple. Five days later, on January 30, 2004, the father learned of the potential adoption. That same day, he filed notice of his intent to claim paternity and to obtain custody with the Nebraska Department of Health and Human Services. On February 2, 2004, the adoptive couple moved the child to Alabama. On February 12, 2004, the adoptive couple filed a petition for the adoption of the child in the probate court of Montgomery County ("the probate court"). Several days later, the probate court issued an interlocutory order awarding custody of the child to the adoptive couple.
On February 20, 2004, the father filed a petition in a Nebraska trial court seeking an adjudication of his claim of paternity and his right to custody of the child. On March 17, 2004, the father and the mother appeared at a pretrial hearing in the Nebraska trial court. Also present at the hearing was an attorney representing the adoptive couple, although he did not make an official appearance. During the hearing, the mother admitted that M.A. is the father of the child in this case. Following the hearing, the Nebraska trial court entered an order finding that it had jurisdiction over the parties and the subject matter of the case. That order further noted that the father and the mother had stipulated that the father was the natural father of the child. On March 30, 2004, the father moved the Alabama probate court to stay the adoption proceedings.
On April 7, 2004, the Nebraska trial court reaffirmed that it had jurisdiction to determine the child's custody. On April 21, the Nebraska trial court held a trial, during which that court received testimony from the father, his mother, and the guardian ad litem appointed to protect the interests of the child. The mother was not present at the trial.
During the trial, the father testified that, at one point, he and the mother had planned on getting married but that the mother had broken off their relationship. The father also testified that he had tried to maintain contact with the mother and wanted to participate in the upbringing of their child but that, because of a lack of cooperation from the mother, he had been unable to do so.
The evidence introduced at trial also indicated that the mother had evidently decided, without the consent of the father, to put their child up for adoption. Before the child was born, the mother arranged to have the child adopted by the adoptive couple. The mother's attorney apparently sent a notice of this potential adoption to the father; however, that notice was *931 mailed to the wrong address. The mother placed an announcement about the potential adoption in a local newspaper in Nebraska; that announcement stated that the father had until five days after the last publication of the announcement, i.e., until February 12, 2004, to file notice of his intent to claim paternity and to obtain custody. As noted above, the father filed notice of his intent to claim paternity and to obtain custody of the child on January 30, 2004. On the same day as the trial, the Nebraska trial court entered a judgment stating, in part:
"3. All the evidence indicates [that the father] did everything he needed to do to be both the biological and actual father of the minor child, wanting to raise, take care of, and support his minor child;
"4. The evidence shows [that the father] did not abandon or neglect the minor child or [the mother] either during the pregnancy or after the minor child's birth;
"5. All the evidence indicates [that the father] did all he needed to do to claim the paternity and custody of his minor child, and complied with all applicable Nebraska statutes;
"6. [The father] did not consent to the adoption of the minor child, and he did not relinquish his parental rights to his minor child;
"7. All the evidence indicates [that the father] is a good and decent person, and that [the father] is a fit and proper person to have the care, custody and control of his minor child;
"8. The evidence further shows [that the father] has supportive parents committed to helping [the father] raise his minor child; and
"9. This Court is legally required, and it would be in the best interests of the minor child to be placed in the care, custody and control of [the father].
"The Court further ORDERS, ADJUDGES and DECREES that:
"1. [The father's] Petition for Adjudication and Right to Custody should be, and is hereby, sustained;
"2. [The father] is adjudicated to be the natural and biological father of the minor child born on January 21, 2004; and
"3. It would be in the best interests of the minor child if his physical and legal care, custody and control were awarded to [the father], and that [the father] should have the physical custody of said minor child and all rights that pertain thereto.
"IT IS SO ORDERED."
The Nebraska trial court supplemented that judgment six days later, adding in part:
"4. With respect to the adoption proceedings in the State of Alabama, to continue such proceedings would not be in the minor child's best interests; and
"5. Any adoption proceedings in Alabama be dismissed and any Orders thereto be dissolved and the State of Alabama assist in returning the custody of the minor child . . . to his biological and custodial parent, . . . [the father], so that the [father] can obtain custody of . . . [the child]."
On April 29, the father moved to enforce the Nebraska trial court's judgment in the probate court. The next day, the father also filed a verified objection to the adoption petition in the probate court. On May 10, 2004, the adoptive couple moved to transfer the adoption proceeding to the juvenile court of Montgomery County ("the juvenile court"), and the probate court did so. On June 4, 2004 the adoptive couple filed in the juvenile court a response *932 to the father's motion to dismiss the adoption action. In that response, the adoptive couple asserted, among other things, that the Nebraska judgment was invalid because they had not been served in the Nebraska proceeding.
On May 24, 2004, the father filed in the family court of Montgomery County ("the family court") a request for registration and enforcement of the Nebraska judgment declaring him to be the father of the child.
On June 14, 2004, the juvenile court action and the family court action were consolidated in the juvenile court. The father's attorney sought to serve notice of the request for registration of the Nebraska judgment on the mother by certified mail, then by publication. No response was ever received from the mother. The attorney for the adoptive couple was mailed notice of the request for registration of the Nebraska judgment, and he later admitted at a hearing on a Rule 60(b), Ala. R. Civ. P., postjudgment motion that he, as well as the adoptive couple, was aware of the registration proceeding.[1]
The juvenile court judge who ultimately presided over this case held a hearing on whether an Alabama court could properly exercise jurisdiction over this matter, and on September 22, 2005, the juvenile court entered a judgment wherein it stated, in part:
"3. That the State of Alabama hereby declines jurisdiction of the case, finding that the State of Nebraska has never relinquished jurisdiction and that jurisdiction is proper in the State of Nebraska, County Court of Madison, Nebraska.
"4. That the Juvenile Court Clerk shall immediately transfer this matter to the State of Nebraska, Madison County Court for further proceedings in this matter. The Court notes that the issues of termination of parental rights and adoption, if any, may be properly heard by the Nebraska Court.
"5. That a copy of this Order be transmitted to the Honorable Reese McKinney, Montgomery County, Alabama Judge of Probate for his determination as to whether the pending adoption case should be stayed, held in *933 abeyance or dismissed without prejudice."[2]
On September 30, 2005, the adoptive couple filed a Rule 59, Ala. R. Civ. P., postjudgment motion; on October 3, they filed a notice of appeal (appeal no. 2050034). Citing the adoptive couple's appeal pending before this court, the juvenile court denied the Rule 59 postjudgment motion on the basis that it was "moot." The adoptive couple subsequently filed a Rule 60(b), Ala. R. Civ. P., postjudgment motion, which the juvenile court denied on the basis that it lacked jurisdiction to consider the motion. On November 22, 2005, this court granted the juvenile court leave to consider the adoptive couple's Rule 60(b) motion.
On December 8, 2005, while the adoptive couple's Rule 60(b) motion was pending in the juvenile court, the Alabama Department of Human Resources ("DHR"), on behalf of the State, moved to intervene, specifically noting that the State has an interest in the enforcement of the UCCJEA. DHR sought to intervene for the purpose of requesting that the juvenile court enforce the Nebraska judgment and order law-enforcement officials to take the child into custody and then turn him over to the custody of the father. On December 13, 2005, the juvenile court granted DHR's motion to intervene.[3]
The juvenile court conducted a hearing on the adoptive couple's Rule 60(b) motion, and it ultimately denied that motion on December 20, 2005. The juvenile court's judgment on the Rule 60(b) motion provided, in part:
"The Nebraska custody determination referenced the natural father and the natural mother. Because [the adoptive couple] were not entitled to custody or visitation under the Nebraska Custody Order  the Order being registered in Alabama  it appears that there was no requirement that notice be sent to the adoptive couple. The adoptive couple argue that their failure to contest the registration of the Nebraska Order within 30 days as provided by the statute is permissible under Rule 60(b)[, Ala. R. Civ. P.,] because [of] excusable neglect, i.e., they should have properly been served with the registration of the Custody Order and thus could not contest the registration of the Nebraska Order.
"Counsel for the natural father correctly argues that the adoptive couple have waived their right to contest the registration within the 30-day allotted time frame. It appears that the adoptive couple had actual notice of the Nebraska Order. However, there is no doubt that they had constructive notice that the Nebraska Custody Order in favor of the natural father was filed in Alabama together with a petition to enforce same.
"On May 24, 2004 prior to Judge Anderson's Order finding the Nebraska Order enforceable as of the June 16, 2004 date of registration, the `Petition *934 for Enforcement of Child Custody Determination' was filed by counsel for the natural father. Attached to that petition as Exhibit # A was a copy of the child custody determination from the State of Nebraska. The certificate of service at the end of the pleading, signed by counsel on May 24, 2004, clearly shows the names of all persons served with a copy. These include Hon. Judge Reese McKinney, Judge of Probate, Montgomery, Alabama; Hon. Richard W. Krepela, Madison County Court Judge, Madison, Nebraska; Melissa A. Wentling, Wentling Law Office, Norfolk, Nebraska; Richard D. Stafford, [Nebraska Guardian ad Litem] attorney for the minor, Norfolk, Nebraska; Bryant A. Whitmire, Birmingham, Alabama, counsel for the adoptive couple. Counsel for the natural father asserts that [the adoptive couple] waived their right to contest registration within 30 days by moving the Court to allow them to intervene as necessary parties. He further correctly asserts that even if they did not expressly waive their right to contest the registration of the valid Nebraska Order, the action of intervening in the case placed them squarely in the middle of the enforcement case. No request for a hearing was received by the Court after receipt of the May 24, 2004 Petition/Nebraska Order was filed and notice given as required under the Alabama Rules of Civil Procedure to counsel for the adoptive couple. The Rule 60(b) Motion as to notice and opportunity to request a hearing is due to be denied.
"A review of the documents filed in both the [family] court and the [juvenile] court, now consolidated, clearly shows that prior to Judge Anderson's registration of the Nebraska custody Order, the Nebraska Interstate Compact on Placement of Children (I.C.P.C.) administrator had requested the return of the child from the Alabama I.C.P.C. administrator. Attached hereto is a copy of that request dated May 17, 2004, which reads,
"` . . . According to the interstate compact on the placement of children . . . article V (copy attached), [Nebraska] is requesting that the [Alabama] I.C.P.C. instruct the local attorney or supervising agency to cooperate in returning the child to [Nebraska]. The father has claimed paternity and been awarded custody. [Nebraska] court orders attached. Please notify Mary Dyer today, May 17, 2004, of the plan to return the child. The father will be in Atlanta, Georgia, on Wednesday, May 19th. Arrangements can be made for the child's return to him in Atlanta by contacting his attorney, Melissa Wentling at [address omitted].'
"In addition, attached is the affidavit of Mary Dyer filed with this Court [on] June 25, 2004 in support of the natural father's Motion to Dismiss and for Enforcement filed by counsel for the father [that] clearly sets out the timeline and evidences at paragraph # 3 that the adoptive couple were required to sign an executed `At-Risk Placement' document which provided that in the event the birth father came forward or asserted his interest in the child, even after the time of placement, that the State of Alabama could require these adoptive parents to return the child to the State of Nebraska for further determination of the rights of the putative father. Mrs. Dyer's affidavit at paragraph # 6 states that the Nebraska I.C.P.C.'s position is that the natural father had complied with all applicable Nebraska law pertaining to claiming paternity and seeking custody of . . . [the child]."
(Emphasis added.)
The juvenile court ultimately concluded that Nebraska is the proper jurisdiction to *935 determine the matter of the child's custody; however, despite stating that the Nebraska judgment was properly registered in Alabama, the juvenile court did not specifically order the return of the child to the father. On December 28, 2005, the adoptive couple appealed the denial of their Rule 60(b) motion (appeal no. 2050277).

II. Discussion
On appeal the adoptive couple argue (1) that the juvenile court erred when it determined that Alabama did not have jurisdiction over the adoption and related custody proceedings under the PKPA, (2) that the juvenile court relied on and misapplied an order previously entered by an Alabama circuit court, (3) that the juvenile court erred by denying them a hearing on their Rule 59, Ala. R. Civ. P., postjudgment motion, and (4) that the juvenile court erred when it denied their Rule 60(b), Ala. R. Civ. P., postjudgment motion.
With the exception of the testimony presented to the Nebraska trial court, no testimony was presented in this case. Therefore, because we must determine whether the juvenile court properly applied the law to the facts of this case, our review of this case is de novo. Green v. Green, 706 So.2d 1254, 1255 (Ala.Civ.App. 1997).
A. The Extent of Alabama's Subject-Matter Jurisdiction

1. Whether to apply the UCCJEA or the PKPA
The adoptive couple first argue in their brief to this court that the UCCJEA does not apply to this situation, because § 30-3B-103, Ala.Code 1975, a part of the UCCJEA, provides that "[t]his chapter does not govern an adoption proceeding or a proceeding pertaining to the authorization of emergency medical care for a child." Because of this language, the adoptive couple argue, Alabama law does not specifically provide for the determination of jurisdiction in adoption cases; thus, they argue, the basis for determining whether Alabama or Nebraska has jurisdiction over this matter is found in the PKPA. However, the adoptive couple's argument is unavailing.
In this case, the adoptive couple filed their adoption action in the probate court. The father opposed the proposed adoption; he also filed in the family court a motion to register the Nebraska judgment declaring him to be the father of the child and sought to have the child returned to him. The adoption proceeding was transferred to the juvenile court and was consolidated in that court with the father's family court action. It is clear that before continuing with the child's adoption the issue of the child's custody must be resolved. Indeed, § 26-10A-21, Ala.Code 1975, provides:
"If, at any time during the pendency of the adoption proceeding, it is determined that any other custody action concerning the adoptee is pending in the courts of this state or any other state or country, any party to the adoption proceeding, or the court on its own motion, may move to stay such adoption proceeding until a determination has been made by an appropriate court with jurisdiction pursuant to the provisions of the Uniform Child Custody Jurisdiction Act (UCCJA)[4]or the Parental Kidnapping Prevention Act (PKPA). The adoption may be transferred and consolidated with a custody proceeding pending in any court in this state."
*936 Logically, before a child can be adopted, the biological father's parental rights must be terminated and the matter of custody must be resolved. Although the provisions of Alabama's version of the UCCJEA do not apply to adoption proceedings, this case involved more than adoption, it involved the custody of the child as well.
In many respects, this case is similar to J.B. v. F.B., 929 So.2d 1023 (Ala.Civ.App. 2005), in which this court held that a probate court in Alabama did not have jurisdiction under the UCCJEA to enter a judgment regarding the adoption of a child when Missouri was the home state of the child and a Missouri court had exercised jurisdiction over the child. However, in that case we did not specifically address the applicability of the PKPA to determine jurisdiction in adoption cases.
Importantly, Alabama's version of the UCCJEA specifically excludes from its definition of a "child custody proceeding" in § 30-3B-102(4), Ala.Code 1975, a court proceeding involving adoption. Therefore, the initiation of the adoption proceeding in Alabama was not sufficient to confer jurisdiction in the probate court and thereby prevent the Nebraska trial court from invoking its jurisdiction as to matters involving the child's custody.
Because the provisions of the UCCJEA specifically exclude an adoption proceeding from the definition of a "child custody proceeding," the initiation of an adoption proceeding in Alabama would not, by itself, confer jurisdiction on an Alabama court that is superior to the jurisdiction of another state's court as to child custody, even if the proceedings in the other state's court began later in time. Consequently, the adoptive couple's only recourse is to argue that, in the absence of any provision in Alabama's Code for determining jurisdiction in adoption cases, the provisions of the PKPA apply.[5] However, even the provisions of the PKPA are unavailing to the adoptive couple.
The adoptive couple argue in their brief to this court that Alabama is the child's home state and that the probate court's interlocutory order of February 17, 2004, is a child-custody determination under the PKPA. The adoptive couple claim that the juvenile court's "refusal" to recognize Alabama as the child's home state, and to give effect to the probate court's interlocutory order, was error because it led to the court's conclusion that Alabama did not have jurisdiction.
However, it appears that under the PKPA Alabama is not the child's home state and, furthermore, that Alabama would not have jurisdiction to determine the child's custody under the PKPA. The PKPA defines "home state" as:
"(4) `home State' means the State in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old, the State in which the child lived from birth with any of such persons. Periods of temporary absence of *937 any of such persons are counted as part of the six-month or other period."
28 U.S.C. § 1738A(b)(4). In arguing that Alabama is the home state of the child, the adoptive couple also rely upon 28 U.S.C. § 1738A(c), which provides, in part:
"(c) A child custody or visitation determination made by a court of a State is consistent with the provisions of this section only if 
"(1) such court has jurisdiction under the law of such State; and
"(2) one of the following conditions is met:
"(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State."
(Emphasis added.) In this case, the child was born in Nebraska; the child was moved to Alabama when he was only 11 days old, and he clearly did not live with the adoptive couple from birth. Therefore, Alabama cannot claim home-state jurisdiction under the PKPA. Furthermore, under the facts of this case, an Alabama court cannot invoke jurisdiction under any of the other provisions of 28 U.S.C. § 1738A. Indeed, under the PKPA, an Alabama court is bound to recognize the jurisdiction of the Nebraska trial court in this case because the Nebraska trial court has made a custody determination regarding the child.
In short, the juvenile court properly applied the provisions of the UCCJEA to this case, which is a consolidated adoption and custody case. A custody determination regarding the father's parental rights had to be made before the adoption proceedings could continue. The UCCJEA would apply to the custody determination, and to the extent the PKPA applies to the adoption proceeding, its provisions were not met.
2. Whether the juvenile court properly complied with the provisions of the UCCJEA concerning registration and enforcement of the Nebraska judgment
Having determined that the Nebraska trial court has subject-matter jurisdiction to determine the child's custody, the question arises whether the father properly complied with Alabama's statutes, the PKPA, and Nebraska's statutes in order to register and enforce the Nebraska judgment.
The adoptive couple first argue that they were not properly served with notice of the attempt to register the Nebraska judgment in Alabama and that they were deprived of a hearing on the matter. They also argue that the Nebraska judgment should not be enforced, even if Nebraska has subject-matter jurisdiction over this case, because Nebraska did not have personal jurisdiction over the adoptive couple; specifically, they argue that under Nebraska law they should have been given notice of the proceedings in Nebraska. We address each of these arguments in turn.
Regarding the lack of notice of the father's attempt to register and enforce the Nebraska judgment, it appears that the adoptive couple were never served with notice. However, it also appears that the first time the adoptive couple objected to the lack of notice to them of the registration and enforcement attempt was in their Rule 59 postjudgment motion. Additionally, they were avid participants in the juvenile court proceedings. Thus, it is evident that they waived their right to service of process. Consequently, they cannot *938 now raise that argument on appeal. Kingvision Pay-Per-View, Ltd. v. Ayers, 886 So.2d 45, 56 (Ala.2003) (stating that a failure to raise insufficiency of service of process as a defense in the answer, the amended answer, and a motion for judgment on the pleadings waived the defense of insufficiency of service); Ex parte Dowling, 506 So.2d 340, 342 (Ala.Civ.App.1986) (holding that any insufficiency of process or insufficiency of service of process upon the father was waived by him, because those defenses were omitted from the father's motion to transfer or to dismiss); and Seymore v. Taylor, 716 So.2d 1216, 1219 (Ala.Civ.App.1997) (holding that a party's failure to assert the defense of improper service when it filed its motion to dismiss waived that defense); see also In re D.B., 277 Ga.App. 454, 458, 627 S.E.2d 101, 104-05 (2006) (a party can waive defects in service of process unless an objection is made at the first practicable opportunity) (citing In re D.R.W., 229 Ga.App. 571, 574, 494 S.E.2d 379, 381 (1997)).
The adoptive couple's argument that the Nebraska judgment should not be registered and enforced in Alabama because they were not served with notice in the Nebraska case is more availing to the adoptive couple. They first raised this argument when objecting to the father's motion to dismiss the adoption proceeding that they had initiated in Alabama. Specifically, the adoptive couple argue that the Nebraska judgment should not be registered in this state because the Nebraska court did not have personal jurisdiction over the adoptive couple.
We begin our analysis with Alabama's version of the UCCJEA, which states in part:
"(a) A court of this state shall recognize and enforce a child custody determination of a court of another state if the latter court exercised jurisdiction in substantial conformity with this chapter or the determination was made under factual circumstances meeting the jurisdictional standards of this chapter and the determination has not been modified in accordance with this chapter."
§ 30-3B-303, Ala.Code 1975 (emphasis added). Furthermore, the relevant portions of § 30-3B-205, Ala.Code 1975, provide:
"(a) Before a child custody determination is made under this chapter, notice and an opportunity to be heard in accordance with the standards of Section 30-3B-108 must be given to all persons entitled to notice under the law of this state as in child custody proceedings between residents of this state, any parent whose parental rights have not been previously terminated, and any person having physical custody of the child."
(Emphasis added.) The adoptive couple point out that Nebraska has also adopted the UCCJEA, and its corresponding statutes provide almost identical terms. For example, § 43-1242, Neb.Rev.Stat., provides:
"(a) Before a child custody determination is made under the Uniform Child Custody Jurisdiction and Enforcement Act, notice and an opportunity to be heard in accordance with the standards of section 43-1233 shall be given to all persons entitled to notice under the law of this state as in child custody proceedings between residents of this state, any parent whose parental rights have not been previously terminated, and any person having physical custody of the child."
(Emphasis added.) Furthermore, the PKPA requires:
"(e) Before a child custody or visitation determination is made, reasonable notice and opportunity to be heard shall *939 be given to the contestants, any parent whose parental rights have not been previously terminated and any person who has physical custody of a child."
28 U.S.C. § 1738A(e). In all these statutes, "physical custody" is defined to mean the "physical care and supervision of a child," § 30-3B-102(14), Ala.Code 1975, and § 43-1227(14), Neb.Rev.Stat., or the "actual possession and control of a child." 28 U.S.C. § 1738A(b)(7). Although it appears that the adoptive couple had actual notice of the Nebraska proceeding, given that one of their attorneys was present, nothing in the record indicates that the adoptive couple were properly served with notice of that proceeding. Additionally, the adoptive couple's attorney who was present in the Nebraska proceeding never made an official appearance, and there is no indication in the record that he participated in the proceeding in any way.
This court has previously held that when another state enters a custody order without providing proper notice to a relevant party, or without giving that party a reasonable opportunity to be heard, such an order was not made in accordance with the PKPA. Ex parte Raywood, 549 So.2d 103, 104 (Ala.Civ.App.1989). When an order is not made in accordance with the PKPA, it is "not entitled to full faith and credit by the courts of Alabama." Id. Moreover, our supreme court has observed that "neither the Full Faith and Credit Clause of the United States Constitution, nor any legislation under its authority, entitles a child custody [judgment] entered by a court lacking in personam jurisdiction over affected parties, to extraterritorial effect." Ex parte Dean, 447 So.2d 733, 737 (Ala.1984) (citing May v. Anderson, 345 U.S. 528, 543, 73 S.Ct. 840, 97 L.Ed. 1221 (1953), and Kulko v. Superior Court of California, 436 U.S. 84, 91, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978)).
In this case, the Nebraska judgment does not comply with the requirements of the PKPA. Additionally, Alabama's statutes provide that a foreign state's judgment shall be recognized and enforced only "if the [foreign state's] court exercised jurisdiction in substantial conformity with [Alabama's version of the UCCJEA] or the determination was made under factual circumstances meeting the jurisdictional standards of [Alabama's version of the UCCJEA]." § 30-3B-303. It is evident that the Nebraska judgment also does not comply with the requirements of Alabama's version of the UCCJEA. Finally, the Nebraska judgment appears to not comply with Nebraska's version of the UCCJEA in regard to providing notice to the adoptive couple.
We note that to the extent the Nebraska judgment concerned the father's paternity of the child, no notice was specifically required to be given to the adoptive couple under the above-referenced Nebraska statutes. However, the Nebraska judgment purported to award custody of the child to the father, and thus the adoptive couple were entitled to proper notice and service of process. The lack of proper notice and service of process in this context means that a court does not obtain personal jurisdiction over a respondent. See generally, Nelson v. Robinson, 154 Neb. 64, 70, 46 N.W.2d 892, 895 (1951) (noting that Nebraska has mandatory explicit statutory provisions providing for service of process and when service did not meet those requirements the trial court did not obtain jurisdiction over the defendant).
Therefore the Nebraska judgment was entered without personal jurisdiction over the adoptive couple, and although Nebraska has proper subject-matter jurisdiction over this matter, the Nebraska judgment *940 need not be enforced in this state.[6]
B. The Adoptive Couple's Remaining Arguments
The adoptive couple also argue that their Rule 59, Ala. R. Civ. P., motion was wrongly denied when the juvenile court stated that their motion was made moot by their filing of a notice of appeal. Additionally, the adoptive couple argue that their Rule 60(b), Ala. R. Civ. P., motion was wrongly denied. However, we pretermit discussion of these issues in light of the above analysis.

III. Conclusion
We affirm in part and reverse in part the judgments of the juvenile court. The Nebraska trial court had proper subject-matter jurisdiction to determine the child's custody. However, the Nebraska trial court did not comply with the provisions of the PKPA or the UCCJEA in regard to providing notice and service of process to the adoptive couple of the Nebraska proceeding. Therefore, although the Nebraska judgment as to the father's paternity is valid and recognizable in this state, the custody determination the Nebraska trial court made is not. The Nebraska trial court's judgment is not required to be enforced under our own state's version of the UCCJEA, and, it appears, it was improperly made under Nebraska's version of the UCCJEA in that nothing in the record before this court indicates that notice and service of process of the Nebraska proceeding were given to the adoptive couple. We remand this case and instruct the juvenile court to stay the award of the child's custody until the father properly registers an enforceable child-custody determination from Nebraska.
Additionally, we deny the father's motions to dismiss the adoptive couple's appeals and to strike their brief. We also deny the father's motion for the immediate return of the child to him, as well as the adoptive couple's motion to stay the return of the child to the father. These issues have been resolved in the body of this opinion.
APPLICATIONS GRANTED; OPINION OF MAY 26, 2006, WITHDRAWN; OPINION SUBSTITUTED; MOTIONS DENIED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
PITTMAN, MURDOCK, and BRYAN, JJ., concur in the result, without writing.
THOMPSON, J., concurs in the result only, without writing.
NOTES
[1] At that hearing on the Rule 60(b) motion, the following exchange took place:

"THE COURT: When did you first know that [the father] had filed to domesticate the foreign order?
"MR. WHITMIRE [one of the attorneys for the adoptive couple]: They sent me a copy of a bunch of documents, because I said  I told them we had not received a lot of stuff. So they eventually sent me May the 24th or something of that nature 
"THE COURT: Of what year?
"MR. WHITMIRE: 2004.  with a lot of stuff. But still, the letter does not reflect that they're going to serve [the adoptive couple]. It just says 
"THE COURT: That was not my question. My question is when did you have actual knowledge that [the father] had filed to register his Nebraska custody order?
"MR. WHITMIRE: When we received it about May the 26th or seventh.
"THE COURT: In 2004?
"MR. WHITMIRE: Right.
"THE COURT: So if I understand you correctly, as counsel for [the adoptive couple] you knew the order existed, you knew [the father] was attempting to register the order here.
"MR. WHITMIRE: We knew that there was an order out of Nebraska existing. We never had heard anything else other than his letter saying to the clerk, I want you to serve [the mother]. That's all it says. It didn't say serve [the adoptive couple].
"THE COURT: Either you knew that there was a Nebraska custody order or you didn't. It's a yes-or-no question.
"MR. WHITMIRE: We knew. Yes. We knew.
"THE COURT: In 2004?
"MR. WHITMIRE: (Nodding head)
"THE COURT: On or about May?
"MR. WHITMIRE: Thereabout."
[2] We recognize the apparent inconsistency between section 4 and section 5 of the juvenile court's order. Section 4 declares that any issues concerning adoption may properly be determined by the Nebraska trial court, but section 5 indicates that the probate court should enter an order determining whether to stay, hold in abeyance, or dismiss the adoption proceeding. Nevertheless, the order clearly indicates that any substantive proceedings in this matter must be held in Nebraska.
[3] Although DHR intervened in the proceedings below, it was not identified as an appellee on the notices of appeal. DHR has filed a brief with this court; that brief has a green cover. See Rule 28(h), Ala. R.App. P. ("the cover of the brief of . . . an intervenor or amicus curiae [must be] green").
[4] The Uniform Child Custody Jurisdiction Act has been repealed; it was replaced by the UCCJEA.
[5] Evidently, the authors of the proposed text of the UCCJEA, the National Conference of Commissioners on Uniform State Laws, anticipated that when states adopted the UCCJEA, which excludes from its jurisdictional rules adoption proceedings, they would also adopt the Uniform Adoption Act ("the UAA"), which provides rules for adoption proceedings. Alabama has not adopted the UAA, and thus there is a potential gap in state-law coverage. Practically speaking, this is not necessarily problematic, because in certain circumstances the PKPA may provide jurisdictional rules, and in many situations, such as in this case, a custody battle would invoke the jurisdictional rules of the UCCJEA and may, at the trial court's discretion, serve as a basis for staying the adoption proceedings.
[6] We do not address at this time the issue of under what circumstances an out-of-state child-custody determination that is not in compliance with the PKPA or this state's version of the UCCJEA may nevertheless be enforced in this state. This argument was not addressed by the parties.