610 S.E.2d 144 (2005)
271 Ga. App. 518
In the Interest of J.W., a child.
No. A05A0368.
Court of Appeals of Georgia.
February 4, 2005.
*145 Josephine B. Jones, Macon, for Appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, W. Ashley Hawkins, Forsyth, for Appellee.
ELLINGTON, Judge.
After an evidentiary hearing, the Juvenile Court of Peach County declared J.W. deprived and continued the temporary custody awarded in an earlier order to the Georgia Department of Human Resources by and through the Peach County Department of Family and Children Services (the "Department"). The juvenile court concluded that returning the child to the home would be contrary to his welfare and ordered the Department to discontinue its efforts to reunify the child with his parents. The juvenile court based its order on its findings that the child's mother failed to complete a case plan and did not want to pursue reunification with the child and that the child's father lacked the mental capacity to care for the child, who has special medical needs. The child's father appeals, contending the trial court's factual findings underlying the nonreunification order were not supported by clear and convincing evidence. Finding no error, we affirm.
Georgia law defines a deprived child as, inter alia, "a child who... [i]s without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals." OCGA § 15-11-2(8)(A).
That definition focuses upon the needs of the child regardless of parental fault.... To authorize even a loss of temporary custody by a child's parents, on the basis of deprivation, the deprivation must be shown to have resulted from unfitness on the part of the parent, that is, either intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child. On appeal from a determination that a child is deprived, we review the evidence in the light most favorable to the juvenile court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the child was deprived. Parental unfitness must also be proved by clear and convincing evidence. This standard of review safeguards the high value society places on the integrity of the family unit and helps eliminate the risk that a factfinder might base his determination on a few isolated instances of unusual conduct or idiosyncratic behavior. Only under compelling circumstances found to exist by clear and convincing proof may a court *146 sever the parent-child custodial relationship.
(Punctuation and footnotes omitted.) In re S.J., 270 Ga.App. 598, 599, 607 S.E.2d 225 (2004). A court which adjudicates a child deprived may extend the temporary custody order for an additional 12 months if, after satisfying certain procedural requirements, the court finds that the extension is necessary to accomplish the purposes of the original order. OCGA § 15-11-58(n).
Viewed in the light most favorable to the juvenile court's factual findings, the record shows the following. The child, J.W., who was nine years old at the time of the appealed order, is permanently disabled by cerebral palsy and is confined to a wheelchair. The child cannot communicate verbally, feed himself, dress himself, or use the toilet by himself. The child suffers from seizures and requires constant care and supervision. The Department removed the child from the home after finding that the parents were very frequently entertaining guests in the home and leaving the child and his siblings without adequate care and supervision. After a hearing on the Department's original deprivation petition, the juvenile court concluded that the child's father is not capable of caring for this special needs child. The juvenile court found that the father is mentally handicapped and functions in the lower level of intelligence. The juvenile court based these conclusions on a comprehensive psychological evaluation of the father. The examiner concluded that the father is mildly retarded with a Full Scale IQ of 60; this IQ is lower than 99.6% of the adult population. On a test of his adaptive skills, the father scored lower than 99.9% of the population, with overall adaptive skills "about equivalent to an average early elementary school aged child." The examiner found it unlikely, even with intensive parent education, that the father "has the capacity to become independently responsible for a child, let alone a child with special needs." Because of the father's genuine interest in caring for the child, however, the Department opted at that time not to ask the court to approve a nonreunification plan. Instead, the Department committed to work with the father for a period of six months to see if his parenting skills could be improved sufficiently to receive the child back in the home and to ascertain whether any of the father's relatives could assist in the child's care. On December 8, 2003, the juvenile court adjudicated the child deprived and sanctioned the Department's reunification plan. The father did not appeal the deprivation order.[1]
After continuing its reunification efforts for six months, the Department filed its complaint for an extension of custody and for approval of its revised permanency plan, adoption following termination of parental rights. The Department presented evidence that, because of the father's limited mental abilities, he is unable to manage his own financial affairs and receives adult protective services from the Department, which is the payee for his disability benefits. The Department presented evidence that the father is not capable of caring for the child without around-the-clock assistance. In addition, the Department showed that none of the father's relatives would agree to assist the father in caring for the child. In rebuttal, the father presented his own opinion that he is "very good" with the child and always buys the extra supplies the child needs for school. In the father's favor, the juvenile court found that the father actively participated in the reunification case plan and worked diligently to improve his circumstances. Despite the father's good intentions, however, the court concluded the father lacked the ability to adequately care for the child, given his own limited mental capacity and the child's serious medical needs. The court extended the Department's custody and approved the Department's plan to seek adoption for the child, following termination of parental rights.
On appeal, the father avers that he works and maintains a clean home and that he could care for the child if given the necessary *147 assistance by the Department. The father contends the Department's nonreunification plan ignored the fact that he completed his reunification case plan and was improperly based on one psychological evaluation and the fact that he has an open adult protective services case with the Department. As a result, the father contends, the juvenile court's findings that the child is deprived and that the Department made a reasonable effort to remedy the causes of the child's deprivation and return custody to the father were not supported by clear and convincing evidence. We disagree.
The record contains clear and convincing evidence that when the child was in the father's custody the father failed to provide adequate care and supervision, given the child's special needs. Although the father is capable, with significant assistance, of providing for himself, and even though he has worked diligently to fulfill his case plan, the record shows by clear and convincing evidence that he simply lacks the mental capacity to master the skills necessary to care for this child. In the Interest of U.B., 246 Ga.App. 328, 330(1), 540 S.E.2d 278 (2000) (deprivation order affirmed where clear and convincing evidence showed retarded and emotionally disturbed father was unable to care for his child).[2] See OCGA §§ 15-11-58(h)(3); 15-11-94(b)(4)(B)(i) (where the court finds by clear and convincing evidence that there exists a "medically verifiable deficiency of the parent's physical, mental, or emotional health of such duration or nature as to render the parent unable to provide adequately for the physical, mental, emotional, or moral condition and needs of the child[,]" "[t]here shall be a presumption that reunification services should not be provided"). The Department is not required to provide around-the-clock assistance to enable a mentally disabled parent to care for a child in the home. Because a rational trier of fact could have found by clear and convincing evidence that extension of the Department's custody was necessary to accomplish the purposes of the original order, we affirm. In the Interest of J.W.H., 245 Ga.App. 468, 469-470(1), 538 S.E.2d 112 (2000).
Judgment affirmed.
SMITH, P.J., and ADAMS, J., concur.
NOTES
[1] Because he did not appeal the first deprivation order, the father is bound by those findings. See In the Interest of J.S.G., 242 Ga.App. 387, 388(1), 529 S.E.2d 141 (2000) (unappealed deprivation orders binding in later proceedings to terminate parental rights); In the Interest of D.M.H., 242 Ga.App. 47, 48(1), 528 S.E.2d 816 (2000) (accord).
[2] See also In the Interest of M.T.C., 267 Ga.App. 160, 162, 598 S.E.2d 879 (2004) (same holding in proceedings to terminate parental rights); In the Interest of C.W.S., 231 Ga.App. 444, 447(2), 498 S.E.2d 813 (1998) (accord).