A06A0928. IN THE INTEREST OF D. R., a child.
(637 SE2d 154)

BARNES, Judge.

The father of three-year-old D. R. appeals the termination of his parental rights. He contends that his parental rights were terminated without clear and convincing evidence of misconduct or inability, and without sufficient evidence that the termination was in the

best interest of his son. We find no error, and affirm the juvenile court's order terminating the father's parental rights.

The termination of parental rights is a two-step process. OCGA § 15-11-94 (a); *In the Interest of A. M.*, 275 Ga. App. 630, 631 (621 SE2d 567) (2005).

> The first step requires a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) lack of proper parental care or control is the cause of the deprivation; (3) such cause of deprivation is likely to continue; and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors are satisfied, the court must then determine whether termination of parental rights is in the child's best interest, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure and stable home.

(Footnotes omitted.) Id.

On appeal, we review the evidence in the light most favorable to the juvenile court's order. *In the Interest of D. W.*, 235 Ga. App. 281 (509 SE2d 345) (1998). In conducting our review, we do not weigh the evidence or resolve credibility disputes but defer to the juvenile court's factual findings. *In the Interest of D. F.*, 255 Ga. App. 153 (564 SE2d 767) (2002).

So viewed, the evidence demonstrates that in September 2003, when D. R. was approximately five months old, Whitfield County Department of Family and Children Services (DFACS) received a report that he was living in an unsafe, unstable home. DFACS initiated services to reduce the risks, but in October 2003, the child was taken into emergency custody after the mother stated that she could not care for the infant and attempted to transfer custody to her mother, who was deemed unsuitable. The father, who was married to but separated from the mother, told the caseworker that he could not care for D. R. because he was on medication.

In November 2003, DFACS filed a deprivation petition and prepared a concurrent case plan for the parents. The father was required to pay child support, successfully complete parenting classes, maintain regular and meaningful contact with D. R., maintain a stable source of income, obtain safe, clean and stable housing, submit to a psychological evaluation, and cooperate with DFACS. In December 2003, following a hearing, the juvenile court entered a provisional order finding D. R. deprived and further finding that the father had

no transportation and "is unable to care for the child due to his seizure condition and inability to work." The order was not appealed.

A January 2004 report for the judicial review panel revealed that the father lived in a one-bedroom apartment, and had not paid child support. The panel recommended reunification, which the trial court noted in a subsequent supplemental order filed January 29, 2004. The juvenile court also noted that neither parent had begun work on their case plan. The court incorporated the reunification case plan in a February 4, 2004 supplemental order.

In March and July 2004, the father was evaluated by a psychologist who reported that his primary concerns about the father's parenting ability were his "financial resources, residential stability, relational stability, and seizure disorder." The doctor noted that the father told him that his seizures were not under control despite his compliance in taking medication. The father indicated that he had seizures approximately every six weeks, and sometimes more often. The psychologist indicated that "it would be very difficult and in fact dangerous for [the father] to be a single parent without a reliable co-parent to assist."

In September 2004, DFACS filed a motion to extend custody of D. R., citing the parents' failure to comply with their case plan. Following a hearing, the juvenile court once again found the child deprived and extended DFACS's temporary custody. A January 2005 case plan report noted that the parents' case plan goals were ongoing, but that DFACS would "file a permanency plan with the court in 12 months should the parents fail to complete the case goals." A subsequent review panel recommended a concurrent case plan of reunification, adoption or placement with a relative. The panel's findings showed that the father's application for disability had been denied, that he lived with his mother, and that he needed stable housing and income. The father had completed his psychological evaluation and parenting classes, and was visiting his son, but had not paid any support. The court entered a permanency order in February 2005 noting the panel's findings.

The same psychologist evaluated the father again in September 2005 and reported that although the father had secured his social security benefits and had some steady income, his concerns about the father's parenting abilities were the same. He reported that the father's seizures were not controlled by medication, that the father was concerned that he was running out of his medication and his doctor would not prescribe additional medications because of an unpaid bill, and that the father "has not yet demonstrated a stable ongoing relationship with an individual who could reliability [sic] assist him with the financial needs, transportation needs, and parenting needs of raising a child."

In October 2005, the court held a hearing on DFACS's termination petition, and delayed its order until the father's evaluating psychologist could be deposed. In the interim, DFACS filed another deprivation petition and motion to extend temporary custody. Following a review of the evidence, including the psychologist's deposition, the juvenile court terminated the parents' parental rights, and this appeal ensued.[1]

1. The father argues that his parental rights were terminated without clear and convincing evidence of parental misconduct or inability pursuant to OCGA § 15-11-94 (b) (4) (A). Applying the four factors provided in OCGA § 15-11-94 (b) (4) (A) to this case, we find the evidence supported the juvenile court's finding of parental misconduct or inability.

(a) *The child is deprived.* The father is bound by the juvenile court's prior deprivation orders, which were never appealed. *In the Interest of T. P.,* 270 Ga. App. 700, 704 (1) (608 SE2d 43) (2004).

(b) *Lack of proper parental care or control caused the deprivation.* The juvenile court is authorized to consider "[a] medically verifiable deficiency of the parent's physical, mental, or emotional health of such duration or nature as to render the parent unable to provide adequately for the physical, mental, emotional, or moral condition and needs of the child." OCGA § 15-11-94 (b) (4) (B) (i). *In the Interest of S. W. J. P. D.,* 279 Ga. App. 226, 229 (1) (b) (630 SE2d 824) (2006).

Here, the evidence showed that the father suffered from epileptic seizures that are not controlled by medications. During his seizures, which last from 15 to 30 minutes, the father is basically incapacitated and unable to care for a child. Because of his epilepsy, he is unable to work or drive an automobile. The psychologist testified that it would be dangerous for the father to parent without a reliable co-parent. Although the father maintained that his current live-in girlfriend would assist him in taking care of his son, the evidence showed that the girlfriend's parental rights were terminated to one child, and her other child was in DFACS's custody. She was also unemployed and attempting to get disability because of diabetes and high blood pressure. The father must, however, demonstrate that, "ultimately standing alone," he is capable of mastering and utilizing the necessary skills to meet his parenting obligations. *In re S. R. J.,* 176 Ga. App. 685, 686 (337 SE2d 444) (1985). The trial court properly considered the severity of the father's medical condition and his incapacity during the seizures which prevented him from meeting his parenting goals in determining that lack of proper parental care or control caused D. R.'s deprivation.

---

[1] The mother also filed a notice of appeal, which she amended and then later withdrew.

Additionally, when the child is no longer in the parent's custody whose rights are at issue, OCGA § 15-11-94 (b) (4) (C) directs the trial court to consider "whether the parent without justifiable cause failed significantly for a period of one year or longer . . . to provide for the care and support of the child . . . and . . . to comply with a court-ordered plan to reunite the child with the parent." *In the Interest of H. D. M.*, 241 Ga. App. 805, 806 (1) (527 SE2d 633) (2000). At the termination hearing, the DFACS caseworker testified that the father did not complete his reunification case plan. He did not provide her with verification of his income from his social security benefits, did not maintain stable, clean housing for six months, and did not complete the recommendations from his psychological evaluation that he maintain a custody arrangement with another stable adult due to his seizure disorder. Moreover, the father did not provide any financial support for his son while the child was in DFACS's custody.

Viewing the evidence in the light most favorable to the juvenile court's determination, we conclude that a rational trier of fact could have found by clear and convincing evidence that D. R.'s deprived status was caused by the father's lack of proper parental care or control. See *In the Interest of A. R. A. S.*, 278 Ga. App. 608, 614 (2) (d) (629 SE2d 822) (2006).

(c) *Lack of care or control likely to continue.* In determining whether conditions that caused the child's deprivation are likely to continue, a court may consider the past conduct of the child's father. *In the Interest of B. L. S.*, 239 Ga. App. 771, 775 (521 SE2d 906) (1999).

As previously noted, the evidence reveals that the father failed to achieve many of the goals set out in his reunification plan. In addition, evidence was presented that the father's ability to care for the child had not improved when the child was in foster care. During such time, he failed to maintain a source of income until his recent receipt of social security benefits, failed to provide DFACS with any verification of income, failed to provide adequate financial support for his son, failed to follow the psychologist's recommendation that he obtain stable co-parenting support because of his uncontrolled seizure disorder, and failed to secure stable, adequate housing until the time of the termination hearing.

Given the aforementioned evidence that the father was not capable of successfully parenting his son, the juvenile court was authorized to find that the deprivation would continue. See *In the Interest of K. J.*, 269 Ga. App. 78, 83 (3) (603 SE2d 497) (2004).

(d) *Serious harm to the child.* This court recognizes that the same facts that support a juvenile court's conclusion that a child is deprived and that the deprivation is likely to continue if placed with the parent also support a conclusion that continued deprivation would likely cause the child serious harm. *In the Interest of J. K.*, 278 Ga. App. 564,

569-571 (2), (3) (629 SE2d 529) (2006). As additional evidence in support of this factor, the psychologist who evaluated the father testified that he was concerned about the father's "financial resources, residential stability, relational stability, and seizure disorder. I indicated that I felt like practically speaking because of his seizure disorder that it would be very difficult and in fact dangerous for him to be a single parent without a reliable co-parent to assist." Moreover, the juvenile court was authorized to consider the effect of the lack of permanency on the child in reaching its findings. *In the Interest of M. L. S.*, 273 Ga. App. 554, 558 (1) (a) (4) (615 SE2d 615) (2005). In fact, this court has held that "[c]hildren need permanence of home and emotional stability or they are likely to suffer serious emotional problems." (Citation and punctuation omitted.) *In the Interest of N. M. H.*, 252 Ga. App. 353, 358 (556 SE2d 454) (2001).

Even though there was some argument that if given an additional, yet unspecified period of time, the father might be capable of parenting his child, the juvenile court was authorized to find from the evidence that continued deprivation was likely to cause serious physical, mental, emotional, or moral harm to the child.

2. Finally, the juvenile court was authorized to conclude that the termination of the father's parental rights was in the child's best interest. In reaching this conclusion, the court could consider the same factors that supported its finding of parental inability. *In the Interest of M. V.*, 253 Ga. App. 669, 672 (560 SE2d 125) (2002). Based on the evidence discussed above, including the successful placement of the child in foster care, any rational trier of fact could have concluded that termination of parental rights was in the best interest of the child. *In the Interest of M. L. P.*, 236 Ga. App. 504, 510 (1) (d) (512 SE2d 652) (1999) (juvenile court has broad discretion in determining how the interest of the child is best served).

*Judgment affirmed. Andrews, P. J., and Bernes, J., concur.*

DECIDED OCTOBER 5, 2006.

*Meron Dagnew, Bentley C. Adams III*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charissa A. Ruel, Assistant Attorney General, Cynthia N. Johnson*, for appellee.