638 S.E.2d 861 (2006)
In the Interest of D.N.K., a child.
No. A06A1489.
Court of Appeals of Georgia.
November 16, 2006.
Nathan A. Hayes, Norcross, for Appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charissa A. Ruel, Assistant Attorney General, Lytia G. Brown, Atlanta, for Appellee.
JOHNSON, Presiding Judge.
The mother of four-year-old D.N.K. appeals from the juvenile court's order finding the child deprived and continuing temporary custody of the child with the Fulton County Department of Family and Children Services ("the Department"). The juvenile court's decision was based primarily on a finding that the mother, who has retained custody of her three other children, could not properly care for D.N.K. without support due to D.N.K.'s disability. Because the finding of deprivation *862 is not supported by clear and convincing evidence, we reverse the judgment of the juvenile court.
On appeal from a determination that a child is deprived, we review the evidence in the light most favorable to the juvenile court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the child was deprived.[1] This standard of review safeguards the high value society places on the integrity of the family unit and helps eliminate the risk that a factfinder might base his or her determination on a few isolated instances of unusual conduct or idiosyncratic behavior.[2] Only under compelling circumstances found to exist by clear and convincing proof may a court sever the parent-child custodial relationship.[3]
Viewed in a light most favorable to the judgment of the juvenile court, the evidence shows that D.N.K. and two of his siblings came into the Department's custody in December 2003 based on the mother's failure to provide adequate supervision for the children.[4] Specifically, the mother had left the children with a babysitter who had been mistreating them. A reunification plan was developed and D.N.K.'s siblings, one of whom has traits of autism, were returned to the mother's custody in 2004. D.N.K., who suffers from developmental delays, remained in the Department's custody and underwent occupational, physical and speech therapy. He visited his mother and siblings on weekends.
A case plan was developed to reunite the child with his mother and siblings. The mother complied with the case plan requirements. But in June 2005, the juvenile court reviewed the case and found that the mother was no longer employed, did not have adequate child care, no longer had a telephone, and was having difficulty paying rent. The court ordered her to resume compliance with the case plan.
In November 2005, the Department filed a deprivation complaint on behalf of D.N.K. The Department alleged that D.N.K. had been in foster care for three years and had delays in cognitive, language and motor skills; that the mother was not able to provide the necessary care for the child; and that the mother had stated that she could not care for D.N.K. The juvenile court found the child deprived and noted that the previous temporary custody order would expire soon.
A month later, the Department filed another deprivation petition, and noted that it had also filed a petition to terminate the mother's parental rights to D.N.K. The Department noted that the mother had completed her reunification case plan goals, with the exception of obtaining stable employment.
At the December 2005 deprivation hearing, Dr. Andrew Gothard, a psychologist, testified that he evaluated the mother in May 2004. Dr. Gothard stated that when he examined the mother, her intelligence test scores placed her in the borderline to bottom end of the average range of intellectual functioning. He testified that the mother exhibited possible cognitive defects which could interfere with her ability to make good judgments or adequate parenting decisions. Dr. Gothard diagnosed the mother as having an adjustment disorder with depressed mood and a depressive disorder. Dr. Gothard recommended psychotherapy and a psychiatric evaluation. He opined that the mother's parenting abilities were impaired by her low intelligence and untreated mental health issues, though he did not specify the manner in which her parenting abilities were impaired. Dr. Gothard testified that the mother acknowledged that D.N.K.'s sibling, J.T., was diagnosed with autism, but that she believed that was a misdiagnosis and that he actually has attention deficit hyperactivity disorder. The mother told Dr. Gothard that she would parent D.N.K. as she would any other child. In Dr. Gothard's opinion, given the number *863 of children in the home, including two with disabilities, the mother would not be able to parent D.N.K. without support. He added that if she received the proper psychotherapy and medication it would improve her chances. Dr. Gothard did not evaluate D.N.K. or J.T., or discuss their specific limitations or needs.
A caseworker testified that the mother made steady progress on her reunification case plan during the two years she worked with her. The child had overnight visitation with his mother and siblings on weekends. During one visit, D.N.K. had a fight with J.T. and sustained scratches to his face. The mother told the caseworker she felt overwhelmed by the possibility of having another child with special needs in the home. As a result, the Department decided to change the case plan goal to termination of parental rights. At the time, the mother agreed with the decision. The caseworker added that the mother completed her case plan goals, except that she had no documentation of employment. She added that the mother asked the caseworker if she could assist her with the rent payment for April 2005.
A family therapist with Family Ties testified that she worked with the mother for about 18 months. She stated that the mother told her she was concerned about her ability to care for D.N.K. On the morning of the December 2005 deprivation hearing, when the therapist asked the mother whether she wanted to keep D.N.K., the mother gave conflicting answers. The therapist testified that the mother was going to domestic counseling, "work[ing] on her depression issues," and taking medication.
An outreach specialist with Atlanta Alliance on Developmental Disability testified that she made home visits to assist the mother with J.T. She also helped the mother apply for jobs and obtain assistance for an electric bill. She testified that the mother sometimes seemed depressed and that her income was very limited. She said that the mother showed affection to the child during visits, that D.N.K. returned affection, and that he played with his siblings. The specialist testified that if D.N.K. were returned to the mother, she would be concerned unless someone came in and worked with her.
At the deprivation hearing, the mother admitted that she had said in July 2004 she could not take care of the children. She attributed the statement to the recent birth of her fourth child. She also admitted that she had said in October 2004 that she could not take care of D.N.K. However, the mother testified that she is ready to have custody of D.N.K., and that she made the earlier statements when she was under a lot of stress, such as when she had lost her job and just given birth. The mother testified that D.N.K. has bonded with his siblings and with her. She added that she was looking for a less expensive apartment, and that in order to better care for the children she would only need a job and a MARTA bus card. She testified that her last job was as a cashier, that she worked tweny-four to thirty-six hours per week, and that she held that position for three years. At the time of the hearing, she was working as a babysitter.
In its order, the juvenile court made the following findings: the mother cannot properly care for D.N.K. due to the child's developmental disabilities, which have resulted in delays in his motor skills, language skills, and cognitive ability; the mother has stated that she is unable to care for the child due to his disability; the mother has failed to maintain a stable source of income; the mother needs assistance from the Department in order to care for the child; an assistance provider expressed concern about the mother's ability to care for the child; and the mother has been diagnosed with an adjustment disorder with depressed mood.
1. The mother contends the Department has not shown by clear and convincing evidence that D.N.K. is deprived within the meaning of OCGA § 15-11-2(8). We agree.
Georgia law defines a deprived child as, inter alia, "a child who . . . [i]s without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals."[5] To authorize even a loss of temporary *864 custody by a child's parent on the basis of deprivation, the deprivation must be shown to have resulted from unfitness on the part of the parent, that is, either intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child.[6] The definition of a deprived child focuses on the needs of the child.[7] The special medical needs of a child and the parent's inability to provide for those needs are relevant considerations.[8]
In this case, there is testimony that D.N.K. has a developmental disability. However, the Department has pointed to no evidence showing the scope of D.N.K.'s disability, or the type of special care required for his needs to be met. It is this absence of evidence which distinguishes this case from others in which the record clearly set out the child's special needs along with the extra care required from a parent to meet those needs.[9]
Similarly, there is a dearth of evidence concerning the mother's health as it relates to D.N.K.'s needs.[10] Although the psychologist diagnosed the mother as having an adjustment disorder with depressive mood one and one-half years before the hearing, he gave no testimony indicating how such a condition renders her unable to provide for D.N.K.'s needs (whatever those needs are). So even though there may have been a diagnosis as to the mother, there is no evidence of a medically verifiable mental deficiency that renders the mother unable to provide for the needs of her child.[11] We point out that the mother is parenting her other three children, and there is no claim that those children are deprived.[12] There has been no showing that D.N.K. has special needs which the mother is incapable of meeting.
The right to the custody and control of one's child is a fiercely guarded right in our society and in our law.[13] It is a right that should be infringed upon only under the most compelling circumstances.[14] Although a child's disability coupled with a parent's limitations may well form a legitimate basis for finding him deprived, the evidence provided to this Court in this case does not meet the definition of deprived.[15] The Department has failed to carry its burden of proof with clear and convincing evidence that would support a finding that D.N.K. is deprived.[16] Therefore, the judgment must be reversed.
2. Based on the foregoing, we need not consider the mother's remaining enumerations of error.
Judgment reversed.
MILLER and ELLINGTON, JJ., concur.
NOTES
[1] In the Interest of J.W., 271 Ga.App. 518, 518-519, 610 S.E.2d 144 (2005).
[2] Id.
[3] Id.
[4] The mother gave birth to a fourth child while D.N.K. was in the Department's custody. That child has remained in the mother's custody since birth.
[5] OCGA § 15-11-2(8)(A).
[6] In the Interest of J.W., supra at 518-519, 610 S.E.2d 144.
[7] In the Interest of J.P., 267 Ga. 492, 480 S.E.2d 8 (1997).
[8] In the Interest of J.C.J., 207 Ga.App. 599, 602, 428 S.E.2d 643 (1993).
[9] Compare id.; In re M.L.G., 170 Ga.App. 642, 643, 317 S.E.2d 881 (1984).
[10] See In the Interest of A.G.I., 246 Ga.App. 85, 87-88(2)(a), 539 S.E.2d 584 (2000); compare In the Interest of J.W., supra.
[11] See In the Interest of C.D.E., 248 Ga.App. 756, 764-765(2), 546 S.E.2d 837 (2001).
[12] See In the Interest of J.T.W., 270 Ga.App. 26, 35(2)(c), 606 S.E.2d 59 (2004) (termination not proper where, among other things, parent apparently able to properly care for child's younger sibling).
[13] In the Interest of K.S., 271 Ga.App. 891, 894, 611 S.E.2d 150 (2005).
[14] Id.
[15] See In the Interest of J.M., 256 Ga.App. 745, 748, 569 S.E.2d 628 (2002).
[16] See generally In the Interest of H.L.T., 164 Ga.App. 517, 518, 298 S.E.2d 33 (1982).