A07A0399, A07A0436. IN THE INTEREST OF R. C. M. et al., children (two cases).
(645 SE2d 363)

ELLINGTON, Judge.

The Juvenile Court of Murray County terminated the parental rights of the mother and father of thirteen-year-old R. C. M. and nine-year-old B. M. M. The parents appeal, challenging the sufficiency of the evidence. For the following reasons, we reverse in Case No. A07A0399 (the father's appeal) and affirm in Case No. A07A0436 (the mother's appeal).

"A termination hearing seeks as a major concern the welfare of the child, with due regard for the rights of the parents." (Citations omitted.) *In the Interest of W. J. J.*, 176 Ga. App. 824, 826 (338 SE2d 54) (1985).

> On appeal, we must determine whether, after reviewing the evidence in a light most favorable to the lower court's judgments, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. This Court neither weighs evidence nor determines the credibility of witnesses; rather,

we defer to the trial court's fact-finding and affirm unless the appellate standard is not met.

(Citation omitted.) *In the Interest of C. R. G.*, 272 Ga. App. 161, 161-162 (611 SE2d 784) (2005). "In determining the balance of the interests of the children against parental rights, the juvenile court is vested with broad discretion which will not be controlled on appeal in the absence of manifest abuse, where the ruling is supported by clear and convincing evidence." (Citations omitted.) *In the Interest of W. J. J.*, 176 Ga. App. at 826.

The Georgia Code sets forth a two-step process to be used in termination of parental rights cases. First, the trial court determines "whether there is present clear and convincing evidence of parental misconduct or inability." OCGA § 15-11-94 (a). Four factors must be present to establish parental misconduct or inability: (1) the child must be deprived; (2) the lack of proper parental care or control by the parent in question must cause the deprivation; (3) the cause of the deprivation must be likely to continue; and (4) continued deprivation must be likely to cause the child serious physical, mental, emotional, or moral harm. OCGA § 15-11-94 (b) (4) (A) (i)-(iv). If the trial court finds that these four factors exist, then the court determines whether termination of parental rights is in the best interest of the child, "after considering the physical, mental, emotional, and moral condition and needs of the child . . . , including the need for a secure and stable home." OCGA § 15-11-94 (a).

In this case, the juvenile court determined that the children are deprived and that their deprivation is caused by the lack of proper parental care and control based on five statutorily authorized considerations: (a) the mother's excessive use of or history of chronic unrehabilitated abuse of intoxicating liquors or narcotic or dangerous drugs or controlled substances which has rendered the mother incapable of providing adequately for the physical, mental, emotional, or moral condition and needs of the children;[1] (b) the father's conviction of a felony and imprisonment therefor which has had a demonstrable negative effect on the quality of the parent-child relationship;[2] (c) the father's and the mother's significant failure without justifiable cause for the year preceding the filing of the petition for termination of parental rights to develop and maintain a parental bond with the children in a meaningful, supportive manner;[3] (d) the father's and the mother's significant failure without justifiable cause for the year

---

[1] OCGA § 15-11-94 (b) (4) (B) (ii).
[2] OCGA § 15-11-94 (b) (4) (B) (iii).
[3] OCGA § 15-11-94 (b) (4) (C) (i).

preceding the filing of the petition for termination of parental rights to provide for the care and support of the children as required by law;[4] and (e) the father's and the mother's significant failure without justifiable cause for the year preceding the filing of the petition for termination of parental rights to comply with a court-ordered plan designed to reunite the children with the parents.[5]

Viewed in the light most favorable to the juvenile court's judgment, the record shows that the family originally lived in New Jersey. The parents both used drugs and were convicted in 1995 of possession of cocaine for which they were sentenced to one year probation and a fine. The parents separated in approximately 1999. Not long after that, the mother pled guilty to a charge of theft by deception for which she remains under a probated sentence in New Jersey. For a period of time, and for reasons not explained in this record, the New Jersey authorities placed custody of the children jointly in the children's maternal and paternal grandmothers. Due to her drug addiction, nomadic lifestyle, and repeated incarcerations, the mother had no contact with the children for four years, beginning in approximately 2000. After regaining custody, the father brought the children to Georgia in 2002, or thereabouts.

In February 2004, when the children and the father were living with his mother, the father's mother disappeared. During the course of the missing person investigation, officers discovered firearms and shooting targets at the home. They also found that the father had spent thousands of dollars of money belonging to his mother, using her credit cards and checks. On June 30, 2004, the father was arrested for, and later pled guilty to, forgery in connection with the use of one of his mother's checks, and possession of a firearm by a convicted felon; he remained incarcerated until June 30, 2006.

When officers arrested the father on June 30, 2004, leaving the children without an adult caregiver, the Georgia Department of Human Resources by and through the Floyd County Department of Family and Children Services ("the Department") took custody of the children. On the day the father was arrested, the parents' older son called the mother, who was living in New Jersey and ignorant of the children's whereabouts, and told her about the father's arrest. The mother became involved in the deprivation case and began efforts to regain custody of the children.

On October 21, 2004, the juvenile court adjudicated the children deprived, based on the father's absence (due to his incarceration) and the mother's failure to maintain contact with the children for four

---

[4] OCGA § 15-11-94 (b) (4) (C) (ii).
[5] OCGA § 15-11-94 (b) (4) (C) (iii).

years, her failure to complete a case plan in New Jersey, her failure to pay child support for the children, her failure to comply with the medication regimen required by her seizure disorder, her longstanding history of drug abuse, her history of attempting suicide by "shooting up" ten bags of heroin, her two criminal convictions in the preceding two years, and her violation of her probation by leaving New Jersey without permission.

The mother's reunification plan required her to obtain stable housing and income, submit to random drug screens, complete parenting classes, attend visitation with the children, and pay child support. Even though the mother violated her probation by leaving the state of New Jersey, she relocated to Georgia in November 2005 to work on her reunification plan. According to one caseworker, after being separated from their mother for over four years, the children were not bonded with her and "wanted nothing to do with" her when they were reunited. The mother had only two visits with the children in the year before the Department filed the termination petition on April 20, 2006, and a total of four visits during the 26 months the children spent in foster care before the hearing on the termination petition on August 15, 2006. In the year before the filing of the petition, the mother made only two child support payments before the court garnished her wages.

The mother admitted having a severe problem in the past with drugs and alcohol. She claimed to have stopped using heroin in June 2002 and claimed to have completed rehabilitation treatment in New Jersey but failed to provide documentation of that. She failed to submit to all requested drug screens, failed to complete recommended drug treatment, tested positive for marijuana use in March 2006, and lied to caseworkers and the court about her recent use of drugs. In addition, the mother has a seizure disorder which she fails to control by taking medication at the proper frequency. The recommended drug therapy costs $340 per month; even without having custody of her children, the mother cannot afford the medication on her current income.

While the father was in jail, a caseworker met with him to perform a family assessment and go over his reunification plan. As with the mother, the father's reunification plan required him to obtain stable housing and income, submit to drug screens requested by his caseworker, complete parenting classes, attend visitation with the children, and pay child support. During his incarceration, the father was necessarily unable to maintain stable housing or employment. He lacked access to parenting classes, which were not offered to him in prison, to drug screens, and to visitation with the children. The father testified that he wrote to his children every week, and one citizen review panel confirmed that he was writing to the children. At

the time of the hearing on the termination petition, the father had been out of prison just six weeks. He was living in a homeless shelter to be close to his job as a welder. The father had one visit with the children, which was "quite a positive visit" according to a counselor who evaluated the family. Despite the father's two-year incarceration, the children were "closely bonded" with their father and expressed their desire to continue their relationship with him.

### Case No. A07A0436

As discussed above, in terms of the mother's misconduct and inability, the juvenile court found that she had a history of chronic unrehabilitated drug abuse and that she had failed to maintain a parental bond with the children, to financially support the children, and to fulfill the requirements of her reunification plan. The mother contends that these findings were based on "limited," "inconsistent," "highly suspect," and "exaggerated if not fabricated" testimony and concerned problems which were "for the most part out of her control." She also contends there was no evidence that any deprivation is likely to continue.

*I. There is present clear and convincing evidence of parental misconduct or inability.*

*(1) The children are deprived.*

The mother abandoned the children in 2000 and could not be found when the father's arrest left them with no other caregiver. When she reappeared in the children's lives after a four-year absence, the children felt estranged from her. The mother failed to visit the children regularly, even after she moved to Georgia. During the two years the children spent in foster care before the hearing on the termination petition, the mother visited with the children only four times, which was insufficient to reestablish a parental bond with the children after such a long separation. With an admitted history of heroin addiction, the mother claimed that she completed drug rehabilitation in 2002 and that she has remained drug free since then. The mother was impeached, however, by proof of inconsistent facts and contradictory statements, and the juvenile court found that the mother lacked credibility. The mother failed to provide any evidence of successful drug treatment, failed to comply with the treatment required by her reunification case plan, and failed to comply with most of the Department's requests for drug screens. She also tested positive for marijuana use just five months before the hearing on the termination petition. The juvenile court's finding that the mother's history of chronic unrehabilitated drug abuse had rendered her incapable of providing for the children's needs was supported by clear and convincing evidence. The juvenile court was also authorized to

find by clear and convincing evidence that in the year before the Department filed the termination petition the mother significantly failed without justifiable cause to comply with her reunification case plan, particularly in regard to visitation. Accordingly, the juvenile court's finding that the children are deprived was supported by clear and convincing evidence.

(2) *The mother's lack of proper parental care or control caused the deprivation.*

Beyond asking this Court to reweigh the evidence and reevaluate the credibility of witnesses, which we will not do, the mother argues that she is not to blame for her failures as a parent, and, therefore, her rights should not be terminated. This argument lacks merit. The definition of a deprived child focuses upon the needs of the child regardless of parental fault. *In the Interest of J. W.*, 271 Ga. App. 518 (610 SE2d 144) (2005). The juvenile court's finding that the mother's misconduct and inability, as discussed above, caused the children's deprivation was supported by clear and convincing evidence. See *In the Interest of D. R.*, 281 Ga. App. 762, 765-766 (1) (b) (637 SE2d 154) (2006) (clear and convincing evidence showed father's inability and misconduct caused deprivation where he had an uncontrolled seizure disorder and failed to complete the goals of his reunification case plan).

(3) *The causes of the deprivation are likely to continue.*

We acknowledge the mother's significant efforts toward fulfilling the goals of her reunification case plan, particularly in terms of achieving stable housing and income and completing parenting classes. But, "what weight to give recent improvements is a question for the trier of fact. In considering a parent's claims of recent improvement, the trial court, not the appellate court, determines whether a parent's conduct warrants hope of rehabilitation." (Citation and punctuation omitted.) *In the Interest of M. N. R.*, 282 Ga. App. 46, 47 (637 SE2d 777) (2006). Clear and convincing evidence supported the juvenile court's determination that the mother's recent stable housing and income and unsubstantiated claims of drug rehabilitation were outweighed by her four-year abandonment of the children, recent drug use, failure to control her seizure disorder, and failure to maintain a bond with the children. These facts support a finding under the proper standard that the mother's misconduct and inability are likely to continue without significant improvement and to result in continued deprivation. See id. (juvenile court's finding that deprivation was likely to continue was supported by clear and convincing evidence where the mother failed to complete drug treatment program required by her plan, relapsed after she completed an earlier program, tested positive for drugs about a month before the termination hearing, and failed to visit and bond with the child and to meet the

other goals of her reunification plan); *In the Interest of L. W.*, 276 Ga. App. 197, 198-200 (1) (622 SE2d 860) (2005) (juvenile court's finding that deprivation was likely to continue was supported by clear and convincing evidence where the mother failed to successfully complete a drug treatment program and to fulfill the other provisions in her case plan).

*(4) Continued deprivation is likely to cause the children serious physical, mental, emotional, or moral harm.*

In light of the children's need for a secure and stable home, evidence of the mother's repeated failure to remain drug free, failure to maintain a bond with the children, and failure to take the steps necessary to reunite with the children, detailed above, is sufficient to prove that the continued deprivation would cause the children serious physical, mental, emotional, or moral harm. *In the Interest of M. N. R.*, 282 Ga. App. at 48; *In the Interest of T. L.*, 279 Ga. App. 7, 16-17 (5) (630 SE2d 154) (2006); *In the Interest of A. B.*, 274 Ga. App. 230, 232 (617 SE2d 189) (2005); *In the Interest of B. I. F.*, 264 Ga. App. 777, 780-781 (1) (592 SE2d 441) (2003).

*II. Termination of the mother's parental rights is in the best interests of the children.*

In light of the fact that at the time of the hearing the children had been without their mother's care for over six years, the same evidence of the mother's failure to remain drug free, failure to maintain a bond with the children, and failure to take the steps necessary to reunite with the children is sufficient to support the juvenile court's finding that termination of the mother's parental rights is in the children's best interests. *In the Interest of A. B.*, 274 Ga. App. at 233; *In the Interest of S. G.*, 271 Ga. App. 776, 781 (611 SE2d 86) (2005); *In the Interest of B. I. F.*, 264 Ga. App. at 781 (2).

Given the juvenile court's findings, which we have determined to be supported by clear and convincing evidence, the court did not abuse its discretion in terminating the mother's parental rights. Accordingly, we affirm.

### Case No. A07A0399

The father contends that parental rights may not be terminated based solely on a parent's imprisonment on a felony conviction, citing *In the Interest of L. F.*, 203 Ga. App. 522 (417 SE2d 344) (1992) ("Although imprisonment alone does not always compel a termination of parental rights, it will support such a ruling when adequate aggravating circumstances are shown to exist.") (citation and punctuation omitted). He argues that his incarceration prevented him from financially supporting the children and completing most goals of

his reunification case plan. He contends that, despite his incarceration, he did maintain a parental bond with the children. Because his incarceration has now ended, he challenges the juvenile court's findings that the children's deprivation is likely to continue and that termination is in the children's best interests.

*III. There is not present clear and convincing evidence of parental misconduct or inability.*

*(1) The children are deprived.*

The children became deprived when the father, their sole legal guardian and provider, became incarcerated. On the day of the hearing on the termination petition, the father was no longer incarcerated,[6] but he was living in a homeless shelter. It is undisputed that he lacked a suitable home and the other resources necessary to provide the children proper parental care or control. See OCGA § 15-11-2 (8) (A) (defining "deprived child"). Accordingly, the juvenile

---

[6] On the issue of whether the children are deprived, the Department argues in its brief as follows:

> The juvenile court previously had determined that the children were deprived and entered deprivation and extension of custody orders to that effect . . . which were never appealed. Moreover, the juvenile court took judicial notice of those prior orders in its termination order. Appellant, therefore, is bound by the juvenile court's prior findings of deprivation, which leaves only the remaining three criteria under section 15-11-94 (b) (4) (A) to be proven. See *In the Interest of J. S. G.*, 242 Ga. App. 387, 388 (2000).

This truncated analysis overestimates the effect of unappealed deprivation orders. An unappealed order adjudicating a child deprived does indeed bind a parent to the finding that *at the time of the order* the child was deprived for the reasons given in the order. And where the Department shows that the conditions upon which an earlier finding of deprivation was based still exist at the time of the hearing on the termination petition, the fact that the parent did not appeal the earlier deprivation order will preclude the parent from challenging the allegation of current deprivation. See, e.g., *In the Interest of D. R.*, 281 Ga. App. 762, 763-765 (1) (a) (637 SE2d 154) (2006) (at time of initial adjudication of deprivation and at hearing on termination petition, father had an uncontrolled seizure order which prevented him from working); *In the Interest of T. J.*, 281 Ga. App. 673, 674-675 (637 SE2d 75) (2006) (at time of initial adjudication of deprivation and at hearing on termination petition, mother had an unrehabilitated drug addiction and inability to maintain steady employment and an appropriate home); *In the Interest of S. G.*, 271 Ga. App. at 778-780 (at time of initial adjudication of deprivation and at hearing on termination petition, mother had a mental illness for which she refused treatment and which rendered her unable to maintain a suitable home). But OCGA § 15-11-94 (b) (4) (A) requires the juvenile court to determine whether "[t]he child *is* a deprived child" – that is, at the time of the hearing on the petition for termination of parental rights – not whether the child *has ever been* a deprived child. In this case, the father's inability that supported earlier the initial finding of deprivation, that is, his absence due to incarceration, no longer existed at the time of the hearing on the termination petition. As a result, the father's failure to appeal the earlier deprivation orders did not preclude him from challenging the juvenile court's finding that the children were deprived at the time of the hearing on the termination petition. We remind all petitioners, juvenile courts, and our brethren on this Court to give due consideration to all the statutory elements in this process and not to presume that a child is deprived based on the faulty premise, "once deprived, always deprived." See *In the Interest of J. K.*, 278 Ga. App. 564, 572-573 (629 SE2d 529) (2006), Ruffin, C. J., concurring specially (disapproving of cases that allowed a presumption, flowing from a finding that deprivation was likely to continue, that continued deprivation would harm the child).

court's finding that the children are deprived was supported by clear and convincing evidence.[7]

*(2) The father's lack of proper parental care or control caused the deprivation.*

It is undisputed that the father's conduct in violating the law directly resulted in his post-incarceration homelessness and lack of resources which are necessary to proper parental care or control of the children. Accordingly, the record contains clear and convincing evidence that the father's lack of proper parental care or control caused the children's deprivation.

*(3) The causes of the deprivation are not, according to clear and convincing evidence, likely to continue.*

There is no evidence in this record that the father ever abused or neglected his children. After the children became deprived when the father was arrested, the Department adopted a reunification case plan for the father which included goals it knew he could not achieve while incarcerated. Further, the juvenile court repeatedly told the father to contact a caseworker after the incarceration ended to *begin* work on the case plan.[8] Yet the Department filed a petition to terminate the father's rights while he was still incarcerated,[9] before he had any realistic opportunity to fulfill his reunification plan goals. Then, the juvenile court severed the parent-child relationship, which requires clear and convincing evidence of parental unfitness, based on the father's previous incarceration and his failure to achieve his reunification case plan goals in his first 45 days of freedom.[10] Under these circumstances, we conclude that the juvenile court's finding that the children's deprivation arising from the father's misconduct or inability is likely to continue is not supported by clear and convincing evidence. See *In the Interest of B. N. A.*, 248 Ga. App. 406,

---

[7] We note that the juvenile court's finding that "the father deprived the children of a relationship with their mother by absconding with them and not allowing the mother to know their whereabouts" contradicts the evidence. Undisputed evidence in the record shows that the heroin-addicted mother abandoned the children in 2000 and made no attempts to contact them or the father or his family until 2004. There was no evidence the father, who had custody and control of the children, knew where to find the mother when he relocated the family to Georgia in 2002.

[8] For example, the September 16, 2004 order of the court that adopted the first citizen review panel report listed the father's goals and, in the column titled "Progress Made on Previous Goals/New Goals Recommended," noted for each goal, "Not achieved. Reason: Incarcerated at present. Contact [caseworker] within 2 days of release to start case plan." Reviews in March 2005 and March 2006 carried similar notations.

[9] The Department was aware of the father's anticipated release date of June 30, 2006 at least as early as the March 9, 2006 case plan review. The Department filed the termination petition April 20, 2006.

[10] Although the disappearance of the father's mother remains unsolved, there was no direct evidence to support the juvenile court's finding that "the father remains a suspect in [his mother's] disappearance."

410-411 (1) (546 SE2d 819) (2001) (termination of father's parental rights reversed where father had no opportunity to comply with a reunification plan because Department never established a plan as court-ordered and only six months elapsed between time juvenile court entered its order requiring the plan and time of the termination hearing; father's previous drug offense conviction, current criminal charges, and lack of greater initiative in reuniting himself with his child was not clear and convincing evidence that his lack of proper parental care or control was causing, and would continue to cause, his child's deprivation); *In the Interest of K. J.*, 226 Ga. App. 303, 305-306 (1), 307-308 (2) (486 SE2d 899) (1997) (reversing termination of mother's parental rights where hearing was held less than four months after the mother was released from prison, although the reunification case plan relied upon by the court required the mother to obtain employment within six months of her release; and reversing termination of father's parental rights where there was evidence that the father and child had a positive relationship, to the extent permitted by the father's incarceration, and there was no evidence presented at the hearing that the child was likely to suffer serious harm absent a termination of parental rights).[11]

"Although we are reluctant to reverse a trial court's determination, there is no judicial determination which has more drastic significance than that of permanently severing a natural parent-child relationship. It must be scrutinized deliberately and exercised most cautiously." (Citation and punctuation omitted.) *In the Interest of K. J.*, 226 Ga. App. at 306 (1). See also *In the Interest of D. N. K.*, 282 Ga. App. 430, 431 (638 SE2d 861) (2006) (because of the "high value society places on the integrity of the family unit[,] . . . [o]nly under compelling circumstances found to exist by clear and convincing proof may a court sever the parent-child custodial relationship") (footnotes omitted). Because the Department failed to carry its burden of proving by clear and convincing evidence that the children's deprivation stemming from the father's misconduct or inability is likely to continue, we do not reach the issue of whether continued deprivation is likely to harm the children. See *In the Interest of H. L. T.*, 164 Ga. App. 517, 520 (298 SE2d 33) (1982). Similarly, it is premature to consider whether termination of parental rights was in the children's best interests. Cf. *In the Interest of S. G.*, 271 Ga. App. at 781. Because

---

[11] See also *In the Interest of H. L. T.*, 164 Ga. App. 517, 520 (298 SE2d 33) (1982), *superseded by amended statute* (termination of parental rights of father incarcerated for killing the child's mother was premature where the record showed that he was a devoted father, that he attempted to maintain contact with the child while in prison, that he was likely to be released on parole after serving three years, and that he had a job and a home waiting for him on his release from prison).

the juvenile court's findings were not supported by clear and convincing evidence, the court abused its discretion in terminating the father's parental rights. Accordingly, we reverse.

*Judgment reversed in Case No. A07A0399; judgment affirmed in Case No. A07A0436. Andrews, P. J., and Adams, J., concur.*

DECIDED APRIL 5, 2007.

*Samuel J. Gowin*, for appellant (case no. A07A0399).

*Goddard, Thames, Hammontree & Bolding, Matthew D. Thames*, for appellant (case no. A07A0436).

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Michelle Townes, Assistant Attorney General, Cynthia N. Johnson*, for appellee.